COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Frank and Senior Judge Hodges
Argued at Chesapeake, Virginia


MODRELL ANTOINE WILLIAMS, S/K/A
 MODRELLE WILLIAMS
                                          OPINION BY
v.    Record No. 2778-98-1        JUDGE WILLIAM H. HODGES
                                       NOVEMBER 21, 2000
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                     Johnny E. Morrison, Judge

          Dianne G. Ringer, Senior Assistant Public
          Defender, for appellant.

          Eugene Murphy, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     Appellant, Modrell Antoine Williams, appeals his conviction

for possession of a firearm by a convicted felon in violation of

Code § 18.2-308.2.  For the reasons set forth below, we reverse.

                      FACTUAL BACKGROUND

     On June 14, 1998, Officer R.K. Butler received information

that someone matching appellant's description had "retrieve[d] a

gun from some bushes."  A short time later, Butler located

appellant.  Appellant quickly entered a laundromat.  Butler

entered and asked appellant, "'Where is it at?'"  Appellant

said, "'It's in the trash can'; and he pointed to a small trash

can."

Butler's partner recovered a gun from the trash can. Appellant told Butler that "the gun did not belong to him" but that a man who had taken his money and who appellant had been chasing had thrown it in the bushes. Because the man allegedly took appellant's money, appellant told Butler "that he took the gun, thinking that he had something." Appellant told Butler that he "thought [he] had something, but [he] tried the trigger, and [he did not] even think it work[ed]."

Butler testified that the recovered gun, Commonwealth's Exhibit 1, was a ".38 caliber revolver," manufactured by "Ivan Johnson Arms." When asked to describe its condition, Butler explained:

> It's rusty. The trigger mechanism does not seem to make the hammer of the gun actuate. There may be a defect in the gun. I don't know if there is a particular way that it has to be used to make the hammer actuate, but the trigger doesn't necessarily work properly; however, it was designed to propel a projectile.

In arguing his motion to strike, appellant contended the gun was incapable of creating an explosion, was "defective," and was inoperable. The prosecutor contended the gun was designed to propel a missile by means of an explosion and was, therefore, a firearm. The prosecutor also argued that

> there is always potential [for the gun to fire]. We don't know what it would take to make that gun an operating gun, and it might just take a good cleaning. We don't know; however, what we do know is that the officer

> testified that it was designed to propel a projectile through an explosion.
>         We also have the defendant's statement, his admission to the police officer, that he thought he had something . . . .

The trial judge asked to look at the gun one more time, after which he stated, "I'm going to deny the motion."

## DISCUSSION

### Introduction

The issue before us is whether the evidence was sufficient to convict appellant for violating Code § 18.2-308.2. In resolving that issue, we must first determine whether the condition of a firearm possessed by a convicted felon may affect the nature or character of the weapon so as to exclude it as a proscribed object under the statute. In making that determination, we analyze Code § 18.2-308.2, our felon-in-possession statute, and statutory and case law from Virginia and other jurisdictions dealing with firearms.

### The Law in Virginia

Code § 18.2-308.2 makes it "unlawful for . . . any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm." This code section contains no definition of "firearm."

In Jones v. Commonwealth, 16 Va. App. 354, 356, 429 S.E.2d 615, 616, aff'd on reh'g en banc, 17 Va. App. 233, 436 S.E.2d 192 (1993), the defendant was convicted of violating Code

- 3 -

§ 18.2-308.2 based on his possession of a BB handgun.  We looked

to the legislature's purpose in enacting the statute and

explained:

> Code § 18.2-308.2 prohibits a felon from
> possessing a device that has the <u>actual</u>
> <u>capacity to do serious harm because of its</u>
> <u>ability to expel a projectile by the power</u>
> <u>of an explosion</u>, and it is not concerned
> with the use or display of a device that may
> have the appearance of a firearm.
> Therefore, we hold that the term "firearm"
> as used in Code § 18.2-308.2 is used in its
> traditional sense.  <u>The statute does not</u>
> <u>seek to protect the public from fear of harm</u>
> <u>caused by the display of weapons; rather, it</u>
> <u>is concerned with preventing a person, who</u>
> <u>is known to have committed a serious crime</u>
> <u>in the past, from becoming dangerously</u>
> <u>armed, regardless of whether that person</u>
> <u>uses, displays, or conceals the</u>
> <u>firearm</u>. . . .  Accordingly, Code
> § 18.2-308.2 does not include a BB handgun,
> which is a device that propels a projectile
> by pneumatic pressure.

<u>Id.</u> at 357-58, 429 S.E.2d at 617 (emphases added).

In <u>Gregory v. Commonwealth</u>, 28 Va. App. 393, 504 S.E.2d 886

(1998), a detective arrested Gregory, a convicted felon, on an

outstanding warrant, and "found in Gregory's pocket a magazine

loaded with ten rounds of .22 caliber ammunition."  <u>Id.</u> at 397,

504 S.E.2d at 888.  From appellant's trailer, the detective

obtained "a .22 caliber Remington Model 522 semi-automatic

rifle."  <u>Id.</u>  The magazine fit into the rifle.  <u>See</u> <u>id.</u>

Gregory contended on appeal that the evidence failed to

prove the object recovered by the detective "was a 'firearm'"

under the statute.  <u>See</u> <u>id.</u> at 399, 504 S.E.2d at 889.  We

stated, "in determining whether an item is a 'firearm,' the Commonwealth must prove two discrete elements: (1) that the weapon is designed or intended to expel projectiles by the discharge or explosion of gunpowder, and (2) that it is capable of doing so."  Id. at 400, 504 S.E.2d at 889 (emphasis added). Noting that "the best method for proving that an item is a firearm is presentation of direct forensic evidence of the nature and operability of the item," we held that "'[c]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence'" to prove that the item is a firearm.  Id. (emphasis added).

We affirmed the conviction and found that the item possessed by Gregory "was designed or intended to expel a projectile by means of a gunpowder explosion."  Id.  In affirming, we reviewed the following circumstantial evidence:

> Although the Commonwealth failed to explain how the rifle operated or to present ballistics evidence, Detective Mooney examined the weapon and testified that it was a .22 caliber, Remington Model 522 semi-automatic rifle.  In his testimony, he referred to the weapon as a "firearm."  The rifle and the loaded magazine were introduced as exhibits and were evidence from which the jury could infer that the rifle was designed or intended to expel projectiles by the power of explosion of gunpowder.

Id.  Significantly, there was no evidence before the trial court that Gregory's rifle was incapable of expelling a projectile by an explosion.

- 5 -

In Redd v. Commonwealth, 29 Va. App. 256, 511 S.E.2d 436 (1999), the defendant, "a previously convicted felon, entered a convenience store and placed a 'long, black gun' on the counter."  Id. at 258, 511 S.E.2d at 437.  No gun was seized from Redd or produced at trial.  See id. at 260, 511 S.E.2d at 438 (Benton, J., dissenting, on the ground that the Commonwealth failed to prove that the object placed on counter "had the actual ability to expel a projectile by the power of an explosion").  We affirmed the conviction, holding:

> The store clerk's description of the object brandished by Redd as "a long black gun" is insufficient, alone, to prove that the object possessed the "ability to expel a projectile by the power of an explosion." However, Redd's threat, upon presenting the weapon, to kill the clerk was an implied assertion that the object was a functioning weapon, being in fact the firearm that it appeared to be and possessing the power to kill.  This implied assertion, which was corroborated by the appearance of the object and was uncontradicted by any other evidence, was evidence sufficient to support the trial court's finding that the object was a firearm.

Id. at 259, 511 S.E.2d at 438 (emphases added).

In Jones and Gregory, we attempted to define the term "firearm" under Code § 18.2-308.2 in a manner that was consistent with the legislature's purpose for enacting the statute.  In Jones, we explained that the purpose of the statute was to keep convicted felons "from possessing a device that has the actual capacity to do serious harm because of its ability to

expel a projectile by the power of an explosion."  Jones, 16 Va. App. at 357-58, 429 S.E.2d at 617.  The definition put forth in Jones employs language from Code § 18.2-308.2:2(G),[1] which defines "Firearm" as "any handgun, shotgun, or rifle which expels a projectile by action of an explosion."[2]

Therefore, the Commonwealth is initially required to prove that a convicted felon possessed an actual firearm, namely, a weapon manufactured for the purpose of expelling a projectile by an explosion.  In Jones, we required the firearm to have the "actual capacity to cause harm" and noted the statute's purpose to prevent felons from becoming "dangerously armed."  Because Jones involved a BB gun, we did not need to address the firearm's "actual capacity to cause harm."

In a case decided before Gregory involving a different firearm statute, we upheld the conviction of a defendant who, while possessing drugs, possessed a firearm containing no clip or magazine.  See Timmons v. Commonwealth, 15 Va. App. 196, 198, 421 S.E.2d 894, 895 (1992) (involving Code § 18.2-308.4, prohibiting possession of "a controlled substance classified in Schedule I or II of the Drug Control Act" while simultaneously

---

[1] Code § 18.2-308.2:2 requires firearm dealers and purchasers to supply information for criminal history record information checks.

[2] That definition comports with the following definition of a "firearm" from Black's Law Dictionary 648 (7th ed. 1999):  "A weapon that expels a projectile (such as a bullet or pellets) by the combustion of gunpowder or other explosive."

possessing any firearm).  Timmons argued that the .32 caliber pistol was not a firearm under the statute "because the absence of the clip rendered the pistol inoperable at the time it was seized."  Id.  The trial court erroneously instructed the jury that "'[a] firearm is <u>any object which gives the appearance of having the capability of firing a projectile</u>" whether or not it has "the capability of firing a projectile.'"  Id. (emphasis added).  Because the instruction allowed the jury to convict appellant for possessing "'any object,' whether that object is an actual weapon or merely a toy," we held the instruction was too broad.  Id. at 199, 421 S.E.2d at 896.  However, we found such error harmless under the facts of the case.  See id.  We explained:

> There is no dispute that the "object" Timmons was charged with possessing was a .32 caliber semi-automatic pistol.  In the context of this case, the jury was not concerned with "any object" but, rather, this particular .32 caliber pistol.  Thus, although the broad language in the instruction included "any object," the evidence showed that the pistol in this case was, in fact, a weapon, and not simply an unidentified object.  Because there was no dispute that the weapon was a .32 caliber semi-automatic pistol, the objectionable language in the instruction did not affect any issue that was in dispute and, therefore, did not affect the verdict.

Id.

     Relying on <u>Rogers v. Commonwealth</u>, 14 Va. App. 774, 418 S.E.2d 727 (1992), we explained in <u>Timmons</u>:

[A] weapon is not excluded from the operation of the statute simply because it is missing a part at the time it is seized. In Rogers, we had occasion to consider whether a weapon, which had no firing pin when discovered and, thus, "could not be fired as found," was nonetheless a "sawed off shotgun" as that term is defined in the "Sawed-Off" Shotgun Act (Code §§ 18.2-299 - 18.2-307).  The appellant in Rogers asserted that his conviction for possession of a sawed-off shotgun should be reversed because the absence of a firing pin made the weapon inoperable.  In holding that "the absence of a firing pin in such a weapon does not exempt it from prohibition under the Act," we recognized that the weapon would have become completely operable "after a moment's delay to insert a firing pin."  We stated that holding otherwise "'would permit criminals to carry [weapons] in the first stage of disassembly, ready to be reassembled on a moment's notice.' Alternatively, a criminal carrying [such a weapon] would be allowed to rendezvous with a confederate carrying the firing pin, thereby avoiding the application of the Act."

We find the reasoning in Rogers persuasive.  A clip, like a firing pin, can be inserted "on a moment's notice" so as to make the weapon operable.  To hold that a weapon merely missing a clip falls outside the scope of the statute would be tantamount to holding that criminals may carry weapons while possessing controlled substances, so long as the weapon is missing one part that could be quickly inserted "on a moment's notice."  As in Rogers, we believe that this would produce a result unintended by the legislature.  Therefore, Timmons' contention that a weapon must be operable when discovered in order to fall within the purview of Code § 18.2-308.4 is without merit.

15 Va. App. at 200-01, 421 S.E.2d at 897 (emphasis added).

- 9 -

In <u>Rogers</u>, the evidence established that

> [t]he weapon had no firing pin when discovered, and therefore could not be fired as found.  Additionally, no firing pin was recovered from appellant.  However, <u>the weapon could be made to fire by inserting a small nail or pin.  No specific expertise would be required to insert such a pin</u>.

14 Va. App. at 776, 418 S.E.2d at 728 (emphasis added).

Except for the absence of the clip in <u>Timmons</u> and the absence of the firing pin in <u>Rogers</u>, conditions that could quickly and easily be remedied, there was no evidence that the weapons would not operate after the missing magazine or firing pin was inserted.

In <u>Jones</u> and <u>Gregory</u>, we set forth the purpose of the statute and explained the elements that the Commonwealth must prove.  See <u>Gregory</u>, 28 Va. App. at 399, 504 S.E.2d at 889 (Commonwealth must prove that weapon was designed or intended to expel projectiles by explosion and that it is capable of doing so); <u>Jones</u>, 16 Va. App. at 357, 429 S.E.2d at 617 (Code § 18.2-308.2 prohibits felons from possessing device that has actual capacity to do serious harm).

ANALYSIS

<u>Introduction</u>

In explaining our analysis, we feel it important to distinguish cases like this one, where the object is recovered, produced at trial and proven to be an actual firearm, from cases in which no object is recovered and produced at trial.  <u>Cf.</u>

Redd, 29 Va. App. at 260, 511 S.E.2d at 438 (because no object was recovered or produced, Commonwealth was required to use circumstantial evidence to establish whether object was actual firearm). Therefore, the following analysis is limited to establishing whether an actual firearm is operational or can be readily made operational.

## Operability

Here, the Commonwealth's evidence established that appellant possessed an actual firearm designed for the intended purpose of expelling a projectile by an explosion. The Commonwealth's evidence also established that the firearm was in disrepair and that neither the hammer nor the trigger of the firearm was operational. The Commonwealth presented no evidence explaining why the gun did not operate or what repairs, if any, could or would make the firearm operational.

Because the statute is intended to prevent harm from convicted felons who become dangerously armed, we hold that the statute prohibits felons from possessing actual firearms that are presently operational or that can readily or easily be made operational or capable of being fired with minimal effort and expertise. To that end, we agree with the reasoning used in Timmons and Rogers that a weapon does not cease to be a firearm merely because it has no present or immediate capacity to fire a projectile. In those cases, which dealt with other firearm statutes, the absence of a firing pin or a loaded magazine were

- 11 -

deemed deficiencies that could easily and readily be corrected. To hold that an object in such condition is not a firearm having the capacity to cause harm would allow convicted felons to possess a temporarily disabled or unloaded firearm that could quickly be made dangerous. Such a result would thwart the statute's purpose. See State v. Anderson, 971 P.2d 585, 591 (Wash. Ct. App. 1999) ("It begs reason to assume that our Legislature intended to allow convicted felons to possess firearms so long as they are unloaded, or so long as they are temporarily in disrepair, or so long as they are temporarily disassembled, or so long as they are not immediately operable.").

## Sufficiency of the Evidence

Under the above definition, the Commonwealth is required to prove that the accused possessed an actual firearm that is, or can readily be made, operational. Thus, the Commonwealth must initially prove that the accused possessed an object manufactured for the purpose of expelling a projectile by an explosion, namely, a firearm. See Jones, 16 Va. App. at 357-58, 429 S.E.2d at 617. It then must prove that the firearm is operational or can readily be made operational. Direct evidence that the police test-fired the firearm would provide the best proof of the firearm's operability; however, "[c]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to

- 12 -

exclude every reasonable hypothesis except that of guilt."

Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876

(1983); cf. Byers v. Commonwealth, 23 Va. App. 146, 150-51, 474

S.E.2d 852, 854 (1996) (explaining that proof of "actual"

possession of a firearm under Code § 18.2-53.1 may be

established by circumstantial evidence, direct evidence, or

both); see also Commonwealth v. Layton, 307 A.2d 843, 844 (Pa.

1973) (fact finder may infer operability from object that looks

like, feels like, sounds like or is like, a firearm; such an

inference would be reasonable without direct proof of

operability).

Some circumstances that can establish that an actual

firearm is operational or can readily be made operational

include: whether the object was loaded with bullets; whether any

implied assertions or threats were made as to the weapon's

ability to cause injury; whether the accused possessed

ammunition, magazines or other parts or pieces suggesting that

the firearm was capable of firing or could readily be made

capable of firing; and proper testimony explaining what minor

steps could make the firearm operational.[3]

Here, the Commonwealth's evidence established that

appellant possessed an actual firearm, although rusty and

inoperable.  Nevertheless, the Commonwealth offered no evidence

_____

[3] This list of circumstances is not exclusive.

- 13 -

that the weapon could be readily rendered functional.[4]  Thus, the Commonwealth proved only that appellant possessed an inoperable firearm, clearly insufficient proof that the weapon was one proscribed by Code § 18.2-308.2.  Accordingly, appellant's conviction is reversed, and the indictment is dismissed.

<u>Reversed and dismissed</u>.

---

[4] The prosecutor's speculative oral argument that the firearm might need only a "good cleaning" was not evidence.