COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Benton, Willis, Elder,
          Bray, Annunziata, Bumgardner, Frank, Humphreys, Clements
          and Agee
Argued at Richmond, Virginia


ERIC WAYNE ARMSTRONG
                                                OPINION BY
v.   Record No. 1388-99-3                  JUDGE G. STEVEN AGEE
                                              JULY 31, 2001
COMMONWEALTH OF VIRGINIA


                    UPON A REHEARING EN BANC

           FROM THE CIRCUIT COURT OF HIGHLAND COUNTY
                  Duncan M. Byrd, Jr., Judge

        Ronald W. Vaught for appellant.

        Michael T. Judge, Assistant Attorney General
        (Mark L. Earley, Attorney General, on brief),
        for appellee.


     Eric Wayne Armstrong, appellant, was convicted in a bench

trial of possession of a firearm by a convicted felon, in

violation of Code § 18.2-308.2.[1]  He contends the evidence was

insufficient to prove that the object he possessed was a firearm

because it was not "operable."

     In an unpublished opinion, a divided panel of this Court

affirmed the conviction.  Armstrong v. Commonwealth, No.

1388-99-3 (Va. Ct. App. Nov. 21, 2000).  However, we stayed the

------

[1] Appellant was also convicted of possession of marijuana,
in violation of Code § 18.2-250.1, which is not the subject of
this appeal.

mandate of that decision and granted a rehearing en banc. Upon rehearing en banc, the stay of the mandate is lifted, and the judgment of the trial court is affirmed for the reasons set forth below.

                                    I.

"Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, the prevailing party below, granting to it all reasonable inferences fairly deducible therefrom." Green v. Commonwealth, 32 Va. App. 438, 442, 528 S.E.2d 187, 189 (2000) (citing Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997)).

So viewed, the evidence established that during a search of the appellant's residence on February 12, 1998, Sheriff Herbert Lightner of Highland County observed what appeared to be a semi-automatic .22 caliber rifle and a BB gun inside a gun cabinet. The gun cabinet was not opened, and neither gun was examined. Neither the rifle nor the BB gun was seized at that time.

The appellant, who had a prior felony conviction, was later charged with possession of a firearm by a convicted felon.[2] At the preliminary hearing, defense counsel delivered the two weapons to the sheriff. No one test-fired the guns. At trial,

_____

[2] At trial, the Commonwealth did not rely upon the BB gun as the basis for the firearm conviction.

Sheriff Lightner testified that the .22 caliber rifle appeared to be the same weapon he saw at the appellant's house.

Melvin Eugene Armstrong, the appellant's cousin, testified at trial that the .22 caliber rifle belonged to him. Melvin stated that he purchased the rifle at K-Mart in October 1997 and produced a receipt from the store with a serial number matching the number on the rifle. Melvin, who was in the military at the time, explained that the rifle "wouldn't fire." He testified: "You could pull the trigger but the gun won't go off. . . . [T]he firing pin ain't [sic] hitting the casing so I assume it's got something to do with the spring in there or the firing pin one." He said that while he was out hunting, "it just stopped shooting."

The appellant did not dispute the existence of his prior felony conviction or his possession of the rifle. Instead, he argued that the rifle was not a "firearm" within the meaning of Code § 18.2-308.2 because it was not presently operable: "If the gun is not operable, and it's unconditional evidence . . . , then it's not a firearm."

The trial court disagreed and found the appellant guilty of possession of a firearm by a convicted felon.

II.

On appeal, the appellant concedes that the rifle was "designed or intended to expel a projectile by discharge or

explosion of gun powder."[3]  However, he contends the gun was "inoperable" based upon the "credible, affirmative, and unrebutted" testimony of Melvin Armstrong.  Accordingly, the appellant concludes, the evidence was insufficient to sustain his conviction.

The Commonwealth contends the trial court was free to disbelieve Melvin Armstrong's testimony that the rifle "wouldn't fire."  The Commonwealth further argues that Sheriff Lightner's testimony that he saw the .22 caliber rifle was sufficient to convict the appellant of this offense.  We agree with the trial court's finding but for different reasons than articulated by it.

Code § 18.2-308.2, at the time of the offense, provided that it was unlawful for a previously convicted felon to "knowingly and intentionally possess or transport any firearm." The statute does not contain a definition of "firearm."

In Jones v. Commonwealth, 16 Va. App. 354, 429 S.E.2d 615, aff'd on reh'g en banc, 17 Va. App. 233, 436 S.E.2d 192 (1993), we held:

> Code § 18.2-308.2 prohibits a felon from
> possessing a device that has the actual
> capacity to do serious harm because of its
> ability to expel a projectile by the power
> of an explosion, and it is not concerned
> with the use or display of a device that may
> have the appearance of a firearm.
> Therefore, we hold that the term "firearm"

_____
[3] The appellant does not contest that he was in possession of the .22 caliber rifle.

> as used in Code § 18.2-308.2 is used in its
> traditional sense.  The statute does not
> seek to protect the public from fear of harm
> caused by the display of weapons; rather, it
> is concerned with preventing a person, who
> is known to have committed a serious crime
> in the past, from becoming dangerously
> armed, regardless of whether that person
> uses, displays, or conceals the firearm.
> "It shall be unlawful for any person who has
> been convicted of a felony . . . to . . .
> possess or transport any firearm or to . . .
> carry about his person, [even if] hid[den]
> from common observation, any weapon
> described in § 18.2-308 A."

Id. at 357-58, 429 S.E.2d at 617 (quoting Code § 18.2-308.2(A)).

Subsequent panel decisions of this Court have enlarged the holding in Jones, which held that a BB gun was not within the "traditional definition of a firearm" for purposes of Code § 18.2-308.2.  In Gregory v. Commonwealth, 28 Va. App. 393, 504 S.E.2d 886 (1998), however, we diverted from the holding in Jones and required the Commonwealth to prove the following elements in order to convict a felon for possession of a firearm:

> (1) that the weapon is designed or intended
> to expel projectiles by the discharge or
> explosion of gunpowder, and (2) that it is
> capable of doing so.

Id. at 400, 504 S.E.2d at 889.  We reiterated these two elements of required proof in Williams v. Commonwealth, 33 Va. App. 796, 537 S.E.2d 21 (2000).

> The Commonwealth must initially prove that
> the accused possessed an object manufactured
> for the purpose of expelling a projectile by
> an explosion, namely, a firearm.  It then

> must prove that the firearm is operational
> or can readily be made operational.

Id. at 807, 537 S.E.2d at 26 (citation omitted).  In furtherance

of this second element, we explained:

> [T]he statute prohibits felons from
> possessing actual firearms that are
> presently operational or can readily or
> easily be made operational or capable of
> being fired with minimal effort and
> expertise.

Id. at 806-07, 537 S.E.2d at 26.  It is this latter judicially

created element of proof, that the felon's weapon is "presently

operational," that is contrary to the plain language of the

statute and has caused unnecessary confusion.

In the context of related statutes, the ready capability

element has been phrased as "operable" or operable "on a

moment's notice."  Where the firearm, a sawed-off shotgun,

lacked a firing pin in Rogers v. Commonwealth, 14 Va. App. 774,

418 S.E.2d 727 (1992), we held that the gun was close enough to

actual firing capacity to justify a conviction for possession of

the firearm in violation of Code § 18.2-300 (the Sawed-off

Shotgun Act).  Similarly in Timmons v. Commonwealth, 15 Va. App.

196, 421 S.E.2d 894 (1992), we held that the absence of the

gun's ammunition clip did not deprive the firearm of its status

as operable and, thus, we sustained the defendant's conviction

under Code § 18.2-308.4 (possession of a firearm while in

possession of cocaine).  Yet, in Williams, we held that the

element of operability was not proven where the convicted

felon's gun was too rusty to fire at the time of his arrest.  We

reversed Williams' conviction for possessing the firearm.  33

Va. App. at 808, 537 S.E.2d at 27.

Contrasted with offenses committed in violation of Code

§ 18.2-53.1, the act of firearm possession under Code

§ 18.2-308.2 (or related statutes) involves no perception

element by a victim.[4]  The crime is complete by the felon's

possession of the weapon.  The statute is interpreted in this

fashion to further the legislative intent of keeping firearms

---

[4] Our decisions, as well as those of the Supreme Court of
Virginia, have read the term "firearm," as used in Code
§ 18.2-53.1, to include "anything that the victim reasonably
perceives to be a firearm, even though it may not in actuality be
a weapon or be capable of firing a projectile by any means."
Holloman v. Commonwealth, 221 Va. 196, 199, 269 S.E.2d 356, 358
(1980).  Operability or actual capacity of the firearm to fire is
not an element of a violation of Code § 18.2-53.1, which
prohibits any person (not just felons) from using a firearm while
committing a felony.  Accordingly, unlike the result in Williams,
we held in Miller v. Commonwealth, 23 Va. App. 208, 475 S.E.2d
828 (1996), that a rusty, inoperable revolver used in a robbery
was a firearm under Code § 18.2-53.1.  We affirmed the trial
court's finding that the rust on the gun did not affect its
appearance and that the weapon had not "lost its identity as a
firearm."  Id. at 213, 475 S.E.2d at 830.
    Jones differentiated a "firearm" in the possession of a
convicted felon under Code § 18.2-308.2 from a "firearm" used in
the commission of a felony under Code § 18.2-53.1.  The basis for
the distinction is not whether a weapon "designed or intended to
expel projectiles by the discharge or explosion of gunpowder"
actually works at the time of a felonious act.  Rather, the
distinction is that whatever object is used to perpetrate a
felony (robbery, for instance) must reasonably create the
perception in the victim of fear of harm.  The victim must
perceive the toy gun as a real firearm in order for the would-be
robber to engender the necessary threat and intimidation to
successfully complete his task and also be guilty of violating
Code § 18.2-53.1.
    It is for this reason that the Supreme Court of Virginia in
Holloman held the use of a BB gun, while not within the
traditional definition of a firearm, was a "firearm" in the
reasonable perception of the victim of a robbery and, therefore,

out of the hands of convicted felons.  Jones concisely sets out

the General Assembly's intent in adopting Code § 18.2-308.2:

> [I]t is concerned with preventing a person,
> who is known to have committed a serious
> crime in the past, from becoming dangerously
> armed, regardless of whether that person
> uses, displays, or conceals the firearm.

16 Va. App. at 358, 429 S.E.2d at 617.

Nothing in this statement of policy, or in the plain

language of the statute, bifurcates convicted felons with

firearms into classes of those (1) possessing firearms ready to

fire immediately, or (2) possessing firearms which can fire with

some repairs or adjustments.

Further, because there is no victim perception element to

Code § 18.2-308.2, as there is under Code § 18.2-53.1, there is

no public policy or legislative intent to find a felon who

possesses a BB gun, a squirt gun or a plastic toy gun to be in

possession of a firearm.  That is all the Jones decision held.

When the General Assembly used the term "firearm" in Code

§ 18.2-308.2, it meant a "firearm" is a firearm under that

statute if it was made to shoot bullets, not BBs or tap water.

Had later interpretations of Jones limited the holding to

devices such as toy weapons, squirt guns or BB guns, those

decisions may not have run afoul of the plain meaning of the

statute or created the byzantine network of decisions which has

---

was a firearm for purposes of Code § 18.2-53.1.  221 Va. at 198,
269 S.E.2d at 358.

since evolved.  The aftermath of Jones has seen creative findings of circumstantial proof with regard to the operability of the accused felon's firearm which are not only difficult to reconcile, but also provide little guidance to the trial courts. For instance, in Redd v. Commonwealth, 29 Va. App. 256, 511 S.E.2d 436 (1999), no gun was seized from Redd or produced at her trial for possession of a firearm by a previously convicted felon.  Nonetheless, Redd's threat to kill the clerk and her placing a "long black gun" on the store counter was sufficient to justify the inference that the object was an operable firearm.  In Taylor v. Commonwealth, 33 Va. App. 735, 536 S.E.2d 922 (2000), a case under Code § 18.2-308.4, the defendant's exposure of a firearm tucked in his waistband was sufficient to permit the inference that it was a functional, operational firearm and sustain a conviction.  As a corollary, decisions such as Rogers, Timmons, Gregory and Williams reflect a highly subjective approach in determining whether a felon's gun, which is in evidence at trial, is sufficiently close to firing status to justify a conviction.

Code § 18.2-308.2 prohibits a convicted felon "to knowingly and intentionally possess or transport any firearm."  (Emphasis added).  While the statute does not define firearm, the adjacent "instant check" statute, Code § 18.2-308.2:2, provides "firearm means any handgun, shotgun or rifle which expels a projectile by action of an explosion."  Similarly, the plain dictionary

meaning of "firearm" is: "A weapon that expels a projectile (such as a bullet or pellets) by the combustion of gunpowder or other explosive." Black's Law Dictionary 648 (7th ed. 1999). Nothing in these or similar definitions bifurcates firearms into actual operational and not fully functional categories.

The application of Jones in subsequent cases has created a body of law that is contrary to the plain meaning of the statute and attributes a legislative intent where none exists. The practical result of the "operability" element has left a confusing zigzag trail for the trial courts to decipher. This is particularly apparent in decisions like Redd and Taylor where no gun is in evidence and there is no direct evidence as to whether the weapon functions, but an inference of operability may be drawn. For instance, if, in Redd, the only action of the accused had been to place the weapon on the store counter without a verbal threat, could an inference of operability properly be drawn?

Even in cases where the gun is introduced into evidence, the question of operability engenders innumerable scenarios as to when or if the weapon could become operable or capable of firing. Did the legislature intend there to be a time test, under Code § 18.2-308.2, on the felon's personal ability to make the weapon operable? If the weapon required more than the insertion of the firing pin or ammunition clip, would the weapon's operability be judged by the felon's ability to make

the weapon fire, his access to contacts who could perform that function or his financial ability to retain a gunsmith who could timely do so?  Would the felon be required to be able to make the weapon operable within a given time period (ten minutes or ten hours)?  It cannot be said that the General Assembly "intended" such a test where the clear and unambiguous meaning of the statute is to prohibit a felon from possessing <u>any</u> firearm.

> When the legislature has spoken plainly courts may not change or amend legislative enactments under the guise of construing them.  The province of construction lies wholly within the domain of <u>ambiguity</u>. There is no ambiguity in the language that forbids a convicted felon to carry a firearm.  That which is plain needs no interpretation.  <u>Winston v. City of Richmond</u>, 196 Va. 403, 407-08, 83 S.E.2d 728, 731 (1954).

<u>Jones</u>, 16 Va. App. at 358, 429 S.E.2d at 617.

The General Assembly included no language in the statute to circumscribe the absolute prohibition of a convicted felon's possession of a firearm.  It matters not whether the gun's current condition is "operable" or "inoperable" or whether a can of WD-40 or the local gunsmith could render the firearm fully functional.

In a prosecution under Code § 18.2-308.2, once the Commonwealth proves the accused is a convicted felon who possessed an object made to "expel a projectile by the combustion of gunpowder or other explosive," then it has proven

all the necessary elements of the crime based on the plain language of the statute.  When enacting Code § 18.2-308.2, the General Assembly's intent was clear:  A felon cannot possess any firearm.  Had the legislature wished to draw a distinction between operable and inoperable firearms, it would have done so with clear and distinct language.  It did not, and neither did Jones.  The reference in Jones to a firearm's "actual capacity to do serious harm" relates to "a weapon designed or intended to expel projectiles by the discharge or explosion of gunpowder" not to a separate requirement of operability.

As the foregoing reflects, we have made a detailed inquiry finding "a mistake exists in our prior decisions."  Accordingly, we exercise the clear authority under Code § 17.1-402(D) to overrule those decisions.

We overrule Gregory and Williams to the extent such cases are read to require the Commonwealth to prove as an element of violating Code § 18.2-308.2 that the convicted felon's firearm was presently operational, was capable of being fired, could be readily converted to firing or could readily be made operational.[5]  We hold Jones established no such requirement.  To the extent Jones is read inconsistently with this opinion, Jones is also overruled.

---

[5] The same rule shall apply in prosecutions under Code §§ 18.2-300 and 18.2-304.4 so that no proof of operability of the sawed-off shotgun, sawed-off rifle or firearm, as applicable, shall be required.

The dissent's inference that the United States Constitution's ex post facto protection is somehow implicated by our decision is inaccurate.  None of the cases cited stand for that proposition, particularly where a prior panel decision is overruled en banc on the basis of clear error in application of a statute.  Moreover, the appellant's conviction in the case at bar is based on acts committed prior to the decisions in Gregory and Williams.

Code § 18.2-308.2 only requires the Commonwealth to prove, as elements of the crime, that the accused is a convicted felon and that he or she possessed an object which was made with the purpose to expel a projectile by gunpowder or other explosion.  In the case at bar, the Commonwealth proved these elements at trial and, therefore, the appellant's conviction is affirmed.

Affirmed.

Benton, J., dissenting.

Applying Code § 18.2-308.2, a panel of this Court in Jones v. Commonwealth, 16 Va. App. 354, 429 S.E.2d 615 (1993), noted that "[t]he legislature has assigned various meanings to the term 'firearm' in [different] sections of Title 18.2," id. at 356, 429 S.E.2d at 615-16, and concluded that "whether the term 'firearm' when used in a statute without being defined is to be given its traditional meaning or a more expansive meaning depends upon the purpose and policy underlying the particular statute." Id. at 357, 429 S.E.2d at 616. Based upon a review of the various statutes, the decision further concluded as follows:

> [W]hen a statute is designed only to proscribe the act of possessing a firearm or the conduct of a felon in order to reduce a real threat of harm to the public, a narrower, more traditional definition of "firearm" is required. See Timmons v. Commonwealth, 15 Va. App. 196, 200-01, 421 S.E.2d 894, 897 (1992) ("firearm" under statute penalizing the possession of a firearm while in possession of cocaine does not include "'any object' that [appears to have] capability of firing a projectile, even if it lacks that capability").

Id.

It was in the context of a review of all the firearm statutes that Jones construed the term "firearm" in Code § 18.2-308.2 and held the following:

> Code § 18.2-308.2 prohibits a felon from possessing a device that has the actual capacity to do serious harm because of its

> ability to expel a projectile by the power
> of an explosion, and it is not concerned
> with the use or display of a device that may
> have the appearance of a firearm.
> Therefore, we hold that the term "firearm"
> as used in Code § 18.2-308.2 is used in its
> traditional sense.  The statute does not
> seek to protect the public from fear of harm
> caused by the display of weapons; rather, it
> is concerned with preventing a person, who
> is known to have committed a serious crime
> in the past, from becoming dangerously
> armed, regardless of whether that person
> uses, displays, or conceals the firearm.

Id. at 357-58, 429 S.E.2d at 617 (emphasis added).  We affirmed that decision en banc.  Jones v. Commonwealth, 17 Va. App. 233, 436 S.E.2d 192 (1993) (en banc).

In the eight years since Jones, neither the Supreme Court nor the legislature has reviewed or changed the definition of firearm that Jones applied to Code § 18.2-308.2.  Indeed, because the General Assembly has revised the firearm statutes on several occasions without any indication that it has disagreed with our definition, "the General Assembly is presumed to use the language as judicially defined."  Williams v. Fairfax Co. Hous. Auth., 227 Va. 309, 314, 315 S.E.2d 202, 205 (1984).  See also Burns v. Stafford County, 227 Va. 354, 360, 315 S.E.2d 856, 860 (1984).

Our decisions in Williams v. Commonwealth, 33 Va. App. 796, 537 S.E.2d 21 (2000), and Gregory v. Commonwealth, 28 Va. App. 393, 504 S.E.2d 886 (1998), have been faithful to the definition of firearm that we used in Jones and based on the construction

of the statutes.  The decision in Williams particularly and thoroughly analyzed Jones and the cases that followed Jones in determining the type of weapon which is proscribed by Code § 18.2-308.2.  See 33 Va. App. at 800-08, 537 S.E.2d at 23-27.

The majority now interprets Code § 18.2-308.2 to require "only [that] . . . the Commonwealth . . . prove, as elements of the crime, that the accused is a convicted felon and that he or she possessed an object which was made with the purpose to expel a projectile by gunpowder or other explosion."  Although the majority professes to follow Jones, it has eliminated the significant element of that decision's holding, the "actual capacity" of the firearm to operate.  Simply put, the majority opinion has re-defined the term "firearm" as used in statutes we analyzed in Williams, Gregory, and Jones.

Regardless of whether the majority overrules Jones and its progeny or merely overrules Williams and Gregory, the majority makes no clear "inquiry . . . whether flagrant error or mistake exists in the [prior] decision[s]."  Pulliam v. Coastal Emergency Servs., 257 Va. 1, 10, 509 S.E.2d 307, 312 (1999).  Those decisions have stood "without any indication to the bench, the bar, or the public that flagrant error or mistake exists in the decision[s]."  Id. at 25, 509 S.E.2d at 321.  Indeed, the Commonwealth in this case does not challenge the definition of "firearm" enunciated in Jones, Williams, and Gregory.  These factors indicate that the principle needs no revision.

Furthermore, the majority has chosen to jettison precedent, not in a tort or contract case involving the payment or non-payment of money to a party, but in a criminal case involving the liberty of a citizen of the Commonwealth.

Although, strictly speaking, judicial decisions do not implicate the Ex Post Facto Clause of the United States Constitution, see United States v. Wasserman, 504 F.2d 1012, 1015 (5th Cir. 1974) (citing James v. United States, 366 U.S. 213, 247-48 (1961) (separate opinion of JJ. Harlan and Frankfurter)), the same considerations bind the judiciary. Indeed, the United States Supreme Court has held as follows:

> [A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, § 10, of the Constitution forbids. An ex post facto law has been defined by this Court as one 'that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action,' or 'that aggravates a crime, or makes it greater than it was, when committed.' If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.

Bouie v. City of Columbia, 378 U.S. 347, 353 (1964) (citation omitted).

Prior to today's decision, the Commonwealth had to prove two discrete elements to demonstrate the existence of a firearm to convict an accused under Code § 18.2-308.2. Gregory, 28 Va.

App. at 400, 504 S.E.2d at 889. With the majority opinion's elimination of the "actual capacity" requirement from Jones, the Commonwealth will only have to prove one element. Such a radical lowering of the threshold for conviction changes the nature of the conduct proscribed and punishes conduct that was legal before the publication of the current opinion. As such, at the very least, it cannot apply in this case, where the evidence was insufficient to convict Armstrong under our prior interpretation of this statute. As stated in the dissent from the panel decision, "the Commonwealth failed to prove that 'the weapon could be readily rendered functional.'" Armstrong v. Commonwealth, No. 1388-99-3 (Va. Ct. App. Nov. 21, 2000) (quoting Williams, 33 Va. App. at 808, 537 S.E.2d at 27). Therefore, because the Commonwealth did not bear its burden of proof, we should reverse the conviction.

In conclusion, I believe that Jones and its progeny properly construed Code § 18.2-308.2 and that today's majority's view, which was not advanced on brief by either party, represents merely another way of looking at the same issue we previously decided. Its only compelling feature is that it has garnered a sufficient number of votes to overrule our prior decisions.

For these reasons, I would reverse the conviction. I dissent.