COURT OF APPEALS OF VIRGINIA

Present:   Judges McClanahan, Haley and Beales
Argued at Salem, Virginia


DEVIN LAMONT STREATER

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1253-08-3                      JUDGE RANDOLPH A. BEALES
                                                         NOVEMBER 10, 2009
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                           Charles J. Strauss, Judge

              James C. Martin (Martin & Martin Law Firm, on brief), for
              appellant.

              Donald E. Jeffrey, III, Senior Assistant Attorney General (William C.
              Mims, Attorney General, on brief), for appellee.


        Devin Lamont Streater (appellant) was convicted in a jury trial of two counts of robbery, in

violation of Code § 18.2-58; one count of shooting within an occupied dwelling, in violation of

Code § 18.2-279; four counts of using a firearm in the commission of a felony, in violation of Code

§ 18.2-53.1; one count of armed burglary, in violation of Code § 18.2-89; and one count of

malicious wounding, in violation of Code § 18.2-51.  Appellant was convicted in a separate bench

trial of possession of a firearm by a convicted felon, in violation of Code § 18.2-308.2.  Appellant

appeals all these convictions, arguing that the trial court abused its discretion when it prohibited him

from introducing, as impeachment evidence, the misidentifications made by two witnesses, who

both claimed that different individuals in a photographic lineup were appellant's co-conspirators to

these crimes, although those individuals were not suspects.  In addition, appellant argues that the

trial court improperly denied his motion for a mistrial during the sentencing phase of his jury trial.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Finally, appellant argues that the evidence was insufficient to support his convictions. We disagree with appellant's arguments, and we affirm his convictions for the following reasons.

## I. BACKGROUND

On November 30, 2006, at approximately 10:30 p.m., P.C.[1] was in the kitchen of her Pittsylvania County home. Also in the home, in different rooms, were P.C.'s sons, K.C. and S.J., and two other women, T.C. and T.M.[2] P.C. heard someone outside yell, "Police!" Suddenly, a group of at least four intruders burst through the front door. The intruders all wore black skull caps, baggy jeans, and white tee-shirts underneath hooded jackets. Demanding money and jewelry, they ordered the victims to the floor. S.J. was struck several times in the head with a gun, leaving a large pool of blood on the hallway floor. In addition, both K.C. and T.C. were threatened at gunpoint. Furthermore, the intruders took several hundred dollars in cash from T.C. and a smaller sum of cash from T.M.'s dresser. The home invasion finally concluded after one of the intruders yelled that there was someone outside and gunshots were fired. The victims heard and smelled the gunshots, and a police investigator later found shell casings and bullet holes on the property.

At trial, three of the five victims identified appellant as a participant in the home invasion. T.M., who was in the living room when the intruders burst through the door, testified that appellant was the first intruder through the door. She stated that he "act[ed] like he wanted to hurt and kill someone." T.M. testified that appellant was the intruder who hit S.J. in the back of the head, causing a wound that took seven staples to close. P.C., who was able to peer down the hallway during the invasion, testified that appellant entered K.C.'s bedroom carrying a black

---

[1] We use initials here to identify the victims so as to better protect their privacy.

[2] Also present were P.C.'s boyfriend, who was sleeping in a bedroom, and the babies of T.C. and T.M.

handgun. K.C. testified that appellant entered his bedroom and searched for items to take in the closet.

In addition, Johneisha Davis, a co-defendant who entered a guilty plea for her role in the crimes, testified that she accompanied appellant to P.C.'s home. Davis, who had dated S.J.'s cousin, knew where the home was located and was able to direct appellant there at his request. When they arrived, appellant told her that he and the other perpetrators were going inside the house to "scope the scene out" and to "rob" the victims. According to Davis, appellant wore a bullet-proof vest and carried a handgun. Davis fled when she heard gunshots, but she testified that she saw appellant several weeks later – before he was charged with these offenses. Appellant told Davis that he struck S.J. in the head with a gun. He instructed Davis not to tell anyone about the incident.

Appellant offered several witnesses – including his sister, his girlfriend, and another co-defendant – all of whom testified that appellant attended a party on the night of November 30, 2006. Appellant himself also testified accordingly. Rejecting this alibi defense, both the jury and the trial court (on the possession of a firearm by a felon indictment) found appellant guilty of the aforementioned offenses.

## II. ANALYSIS

### A. ALLEGED MISIDENTIFICATIONS INVOLVING PHOTOGRAPHIC ARRAYS IN WHICH APPELLANT'S PHOTOGRAPH WAS NOT INCLUDED

In a written pretrial motion and later at trial, appellant sought to introduce evidence indicating that – while viewing photographic spreads containing pictures of suspects *other than appellant* – some of the victims had mistakenly identified as appellant's accomplices in this home invasion pictures of individuals who were not considered suspects, whose pictures were included in the photographic spreads only as "filler," as described by appellant's counsel in the trial court. Appellant contended that these alleged misidentifications were relevant and material

to the proceedings because the accuracy of the victims' identification of appellant as a perpetrator of these crimes was the main issue at trial. Appellant argued that "any mistakes these same witnesses have made in identifying any potential co-defendant's [sic] in this same incident are highly probative and even essential to the defendant's case."

At the pretrial stage, the trial court found that evidence of the victims' alleged misidentifications of other suspects in photographic arrays was not sufficiently relevant to appellant's guilt to warrant admission by the court. The court remarked that if it were to permit appellant to present such evidence, the proceedings would "get directed off from . . . trying this defendant" so that "the whole trial [would be] spent on whether somebody else was involved in the crime or not." At the close of the trial, appellant asked the court to reconsider its ruling. Appellant proffered that one of the allegedly misidentified individuals was actually in prison at the time of the crimes committed here.[3] The trial court declined to reconsider the issue, finding both that this proffer occurred too late in the proceedings and that "where the tentacles of that [subject] could go" were "endless." Appellant now appeals this ruling.

In a criminal proceeding, "the determination of the admissibility of relevant evidence is within the sound discretion of the trial court subject to the test of abuse of that discretion." Thomas v. Commonwealth, 263 Va. 216, 236, 559 S.E.2d 652, 663 (2002). "'Only when reasonable jurists could not differ can we say an abuse of discretion has occurred.'" Tynes v. Commonwealth, 49 Va. App. 17, 21, 635 S.E.2d 688, 689 (2006) (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743 (2005)).

---

[3] As to two other allegedly misidentified individuals, appellant was able to proffer merely that they were not considered suspects by the police for the crimes committed here.

Appellant argues on appeal that the trial court abused its discretion in prohibiting appellant from attempting to impeach P.C. and T.M.[4] by demonstrating that they identified "filler" photographs of "filler" individuals rather than photographs of the actual suspects. Appellant admits that the photographic arrays in question did not contain *appellant's* photograph.

Relying mainly on a case from another state, People v. Watkins, 320 N.E.2d 59, 63-64 (Ill. App. 1974), appellant contends that P.C.'s and T.M.'s identifications of "filler" individuals gave rise to an inference that their identifications of appellant at trial were mistaken. Thus, he argues, the trial court should have permitted appellant to present evidence of these alleged misidentifications for impeachment purposes.

We disagree with appellant's contention that the trial court abused its discretion to rule upon evidentiary matters here. See Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). The trial court's decision was based on a reasonable inference – that the subject of the trial would shift from whether *appellant* was a criminal agent here (an appropriate consideration in his trial) to the collateral matter of whether "somebody else was involved in the crime or not."

"A fact is wholly collateral to the main issue if the fact cannot be used in evidence for any purpose other than for contradiction." Seilheimer v. Melville, 224 Va. 323, 327, 295 S.E.2d 896, 898 (1982). "'The test as to whether a matter is material or collateral, in the matter of impeachment of a witness, is whether or not the cross-examining party would be entitled to prove it in support of his case.'" Id. (quoting Allen v. Commonwealth, 122 Va. 834, 842, 94 S.E. 783, 785-86 (1918)). Here, appellant sought to introduce evidence of the allegedly mistaken

---

[4] These were the only two witnesses mentioned in appellant's question presented; therefore, we consider this issue only to the extent it involves misidentifications by P.C. and T.M. See Rule 5A:12(c).

identification of "filler" individuals, a misidentification that did not even involve the identification of appellant, who was not included in these particular photographic arrays. He simply sought to introduce this evidence merely to contradict P.C. and T.M. regarding an identification that did not even involve him.

If we were to conclude such evidence was admissible, we would be starting down a "slippery slope," where the logical conclusion would allow a defendant to impeach any witness by introducing evidence of every misidentification of any individual made by that witness – even in cases where, as here, one perpetrator, because of his own actions, is clearly the primary focus of the witnesses' attention. A witness' misidentification of a person that she simply saw on the street could become admissible evidence for the purposes of impeachment. Such a trend would introduce a significant amount of irrelevant information to trials, drawing attention away from the actual issues in cases and confusing the factfinder.

Significantly, P.C. and T.M. did not claim to be able to identify any other perpetrators with the same certainty that they had when identifying appellant, see People v. Stepney, 360 N.E.2d 1206, 1208 (Ill. App. 1977) (distinguishing Watkins on this basis). Indeed, no evidence in the record establishes that P.C. and T.M. *should* have been able to identify the other perpetrators with the same specificity or accuracy. Rather, both witnesses testified at trial that appellant was a very prominent perpetrator in committing these crimes. According to T.M., appellant was the first intruder to burst through the door, a large and menacing figure, who looked "like he wanted to hurt and kill someone" and who she observed striking S.J. several times in the back of the head. Clearly, T.M. paid a significant amount of attention to this perpetrator, whom she identified as appellant. Likewise, P.C. testified that appellant carried a handgun as he walked into her son's bedroom, creating a reasonable inference that she paid more attention to this perpetrator, who appeared to create the greatest danger to her son. Therefore,

while several perpetrators participated in this home invasion, nothing at trial would support an inference that P.C. and T.M. necessarily observed any other perpetrator under identical or even similar circumstances to the way in which they noted that they observed appellant.  See Commonwealth v. Franklin, 318 N.E.2d 469, 473 (Mass. 1974); see also DeLilly v. State, 276 A.2d 417, 420 (Md. App. 1971).

Moreover, we also note that the trial court, while excluding the misidentifications of "filler" individuals, admitted impeachment evidence that P.C. and T.M. were unable to identify appellant from photographic arrays *that actually contained appellant's picture*.  Nevertheless, both the jury and the trial court (in the separate bench trial involving the firearm-possession-by-a-felon conviction) found the witnesses' later identifications of appellant were credible, which the jury and trial court were entitled to do as factfinders.  See Summerlin v. Commonwealth, 37 Va. App. 288, 295, 557 S.E.2d 731, 735 (2002).  Based on these facts, therefore, we conclude that the trial court committed no abuse of discretion here.

## B. MOTION FOR MISTRIAL

Appellant also argues that the trial court improperly denied his motion for a mistrial based on the prosecutor's allegedly improper reference to appellant's prior felony convictions during rebuttal argument before the jury at the sentencing phase of the trial.[5]  Under settled law, a "timely motion for a mistrial or a cautionary instruction is required to preserve the issue for appeal even if an objection was properly made to the conduct or comments and improperly overruled by the trial judge."  Morris v. Commonwealth, 14 Va. App. 283, 287, 416 S.E.2d 462, 464 (1992) (en banc); see also Schmitt v. Commonwealth, 262 Va. 127, 148, 547 S.E.2d 186, 200-01 (2001).  "There

---

[5] The trial court granted appellant's objection to the admission of certified copies of his prior felony convictions, owing to the Commonwealth's failure to comply with Code § 19.2-295.1.  Appellant, however, later admitted in his own testimony that he had prior felony convictions.

appears to be no exception in Virginia law to the strict application of this rule." Bennett v. Commonwealth, 29 Va. App. 261, 281, 511 S.E.2d 439, 448-49 (1999).

Appellant conceded at oral argument that he did not move for a mistrial until after the prosecutor finished his rebuttal argument and after the jury retired to deliberate the sentence. Appellant's motion for a mistrial, therefore, was clearly untimely.[6] See Schmitt, 262 Va. at 148, 547 S.E.2d at 201. Accordingly, we hold that appellant failed to preserve for appeal his objection to the prosecutor's rebuttal argument, and we express no opinion on whether the argument was, in fact, improper. See Bennett, 29 Va. App. at 281, 511 S.E.2d at 449.

C. SUFFICIENCY OF THE EVIDENCE

Appellant argues lastly that the evidence was insufficient to support his convictions. Appellant presents two arguments here. First, concerning the robbery, shooting within an occupied dwelling, use of a firearm in the commission of a felony, armed burglary, and malicious wounding convictions that were decided by the jury, appellant's sufficiency of the evidence argument addresses only his contentions that the identifications of him at trial were unreliable and that his alibi witnesses were more credible than the Commonwealth's witnesses who identified him as a perpetrator of these crimes. Second, concerning the felon-in-possession-of-a-firearm conviction decided by the trial court, appellant argues that the evidence was completely insufficient to prove that he possessed a firearm.

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light

---

[6] In addition, we note that appellant's alternative motion for a curative instruction was also untimely as the jury had already actually retired to deliberate the sentence when the motion was made.

- 8 -

most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (en banc)). See also Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

### 1. JURY TRIAL CONVICTIONS

Appellant argues that the Commonwealth failed to prove that he was a perpetrator in the November 30, 2006 home invasion, and, therefore, he essentially contends that no rational factfinder could have found beyond a reasonable doubt that he committed the crimes for which the jury convicted him. Appellant claims that the victims who identified him at trial were "confused," as indicated by their attempts to identify him in various pretrial photographic arrays. Furthermore, appellant claims that Davis, appellant's co-defendant, was a self-interested "ex-lover" who fabricated appellant's involvement in the offenses to minimize her own guilt. Thus, appellant asserts that his own alibi witnesses were more credible than the Commonwealth's witnesses.

However, "[i]n a jury trial, the credibility of the witnesses and the weight accorded to their testimony are matters solely within the province of the jury." Lynn v. Commonwealth, 27 Va. App. 336, 351, 499 S.E.2d 1, 8 (1998). Furthermore, viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party below, ample evidence supported a finding that appellant was a perpetrator here. Three of the victims – P.C.,

K.C., and T.M. – identified appellant at trial. Davis testified that appellant said he intended to rob the home, that appellant entered the home wearing a bullet-proof vest and armed with a handgun, and that appellant later told her that he had struck S.J. in the head. A rational factfinder could certainly have found that appellant committed the crimes for which the jury convicted him.

2. BENCH TRIAL CONVICTION

Appellant also argues that the evidence was insufficient to prove that he possessed a firearm, and, therefore, he claims that his conviction under Code § 18.2-308.2 in the separate bench trial should be reversed. In a felon-in-possession-of-a-firearm prosecution, "once the Commonwealth proves the accused is a convicted felon who possessed an object made to 'expel a projectile by the combustion of gunpowder or other explosive,' then it has proven all the necessary elements of the crime based on the plain language of the statute." Armstrong v. Commonwealth, 36 Va. App. 312, 320-21, 549 S.E.2d 641, 645 (2001) (quoting Code § 18.2-308.2).

Appellant's contention that the evidence was insufficient here because no firearm was recovered from his possession is meritless, since circumstantial evidence can support a conviction under Code § 18.2-308.2. See Redd v. Commonwealth, 29 Va. App. 256, 258-59, 511 S.E.2d 436, 437-38 (1999). Here, there was credible testimony that appellant possessed what certainly appeared to be a firearm and that shots were fired. That testimony was corroborated by physical evidence that shots indeed were fired, such as bullet holes found in the house and empty shell casings found around the home after the home invasion was over. A rational factfinder, such as the trial court here, was certainly permitted to infer from this evidence that appellant carried an actual firearm, rather than a toy gun or water pistol, as appellant claims on appeal. Based on these facts, therefore, we conclude that the evidence was also sufficient for

a rational factfinder to convict appellant of being a convicted felon in possession of a firearm under Code § 18.2-308.2.

## III. CONCLUSION

For the foregoing reasons, we affirm each of appellant's convictions.

<u>Affirmed.</u>