COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Felton, Judges Elder, Frank, Humphreys, Kelsey, McClanahan, Haley,
        Petty, Beales, Powell and Alston
Argued at Richmond, Virginia


DUANE ELMER STARTIN, JR.

                                                              OPINION BY
v.        Record No. 2837-08-4                      JUDGE CLEO E. POWELL
                                                            MARCH 23, 2010
COMMONWEALTH OF VIRGINIA


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David T. Stitt, Judge

        Neal Goldberg (Teresa E. McGarrity; Office of the Public Defender,
        on briefs), for appellant.

        Craig W. Stallard, Assistant Attorney General (William C. Mims,
        Attorney General, on brief), for appellee.


        Duane Elmer Startin, Jr. ("Startin") appeals two convictions for use of a firearm during

the commission of a felony, in violation of Code § 18.2-53.1. Before a panel of this Court, he

argued that the trial court erred in finding that the evidence was sufficient to prove that (1) the

item he used during the commission of two robberies was a "firearm," and (2) he used or

attempted to use a firearm or displayed a firearm in a threatening manner.[1] A divided panel of

this Court affirmed Startin's convictions. See Startin v. Commonwealth, 54 Va. App. 778, 682

S.E.2d 115 (2009). We granted Startin's petition for rehearing en banc and stayed the mandate

_____

        [1] In his petition for rehearing en banc, Startin asked this Court to invoke the ends of
justice exception to Rule 5A:18 and consider his argument that the evidence was insufficient to
prove that he used or attempted to use a firearm in a threatening manner. He did not brief this
argument, and, because this failure to adhere to Rule 5A:20(e) is significant, we are unable to
consider the merits of that question presented. Jay v. Commonwealth, 275 Va. 510, 520, 659
S.E.2d 311, 317 (2008).

of the panel's decision.  On rehearing en banc, we hold that the replica of a firearm that Startin

used during the commission of two robberies is a firearm within the meaning of Code

§ 18.2-53.1.  Therefore, we affirm Startin's convictions.

## I.  BACKGROUND

On January 12, 2005, Startin entered a pharmacy, approached the pharmaceutical

counter, and stated that he needed a bottle of Oxycontin.  When the pharmacist asked Startin for

his prescription, he lifted his shirt to reveal what looked like a black handgun tucked into the

front of his pants.  The clerk saw the gun but hesitated before Startin demanded that she "hurry

up."  The pharmacist gave him a bottle of generic Oxycodone ER.  Startin left the store with the

bottle.

Nine days later, Startin entered a different pharmacy and asked the pharmacist whether

they stocked Oxycontin.  After learning that the pharmacy had Oxycontin, Startin grabbed an

object that appeared to be a black handgun from his waistband and pointed it at the clerk.  The

clerk described the gun as an older model handgun but was unsure whether it was a pistol or

revolver.  When Startin ordered the pharmacist to give him the drugs, the pharmacist gave Startin

a bottle containing one hundred pills.

After Startin was arrested, police recovered a "John Wayne Replica" .45 caliber handgun

made by the Franklin Mint.  This commemorative replica appears to be the same in size, weight,

and shape as the original firearm.  This replica, however, does not include a firing pin or other

mechanical device necessary to fire a projectile.  Startin told police that this was the object he

used during the robberies.

Startin pled guilty to three counts of robbery but pled not guilty to two counts of use of a

firearm in the commission of a felony, in violation of Code § 18.2-53.1.  During his bench trial,

Startin challenged whether the item he possessed met the definition of a firearm under Code

§ 18.2-53.1. As evidence in the trial, the parties stipulated that

> [t]his weapon is a commemorative replica. In its outward
> appearance, including size, weight, and shape, it appears to be an
> operational firearm designed to expel .45 caliber ammunition by
> explosion. However, because the weapon was a replica, the
> manufacturer did not include a firing pin or other mechanical
> device necessary to fire a projectile by explosion.

Upon this proffer of the evidence, the trial court convicted Startin of two counts of use of

a firearm during the commission of a felony. In pronouncing its judgment, the trial court cited

several cases from both this Court and the Supreme Court of Virginia for the proposition that the

items in these cases were held to be firearms because they appeared to be capable of firing.

After discussing these cases, the trial court held, "the bottom line is that . . . the item that was

used was a firearm, pursuant to Virginia Code § 18.2-53.1." This appeal followed.

## II. ANALYSIS

Appellant relies on Sprouse v. Commonwealth, 19 Va. App. 548, 551-52, 453 S.E.2d

303, 305-06 (1995), to argue that a conviction under Code § 18.2-53.1 requires that the object

displayed actually be a firearm and because the item he possessed was an inoperable,

commemorative replica of a firearm, he cannot be convicted of using a firearm during the

commission of a felony. The Commonwealth responds that Code § 18.2-53.1 "not only is aimed

at preventing actual physical injury or death but also is designed to discourage criminal conduct

that produces fear of physical harm." Holloman v. Commonwealth, 221 Va. 196, 198, 269

S.E.2d 356, 358 (1980). Because the trial court found that appellant's commemorative replica

firearm "appear[ed] to be an operational firearm designed to expel forty-five caliber

ammunition," the Commonwealth contends that the replica firearm was a firearm for the purpose

of Code § 18.2-53.1. On brief, the Commonwealth asks this Court to "at a minimum" limit

Sprouse to the facts of that case and further asserted at oral argument that Sprouse was wrongly decided and should be overruled.

To support a conviction for use of a firearm during the commission of a felony, under Code § 18.2-53.1, the Commonwealth must prove

> (1) that the accused "possessed" an object; (2) that this object was a "pistol, shotgun, rifle, or other firearm"; (3) that the accused "used or attempted to use the firearm or displayed the firearm in a threatening manner"; and (4) this action involving the firearm occurred during the commission or attempt to commit one of the felonies enumerated in the statute.

Thomas v. Commonwealth, 25 Va. App. 681, 684-85, 492 S.E.2d 460, 462 (1997) (citations omitted). Code § 18.2-53.1 neither defines firearm nor refers to any other statute that defines the term. Therefore, the task of interpreting what the General Assembly intended as the definition of firearm has fallen upon Virginia's courts. In construing the General Assembly's intent, "[e]ven though any ambiguity or reasonable doubt as to the meaning of a penal statute must be resolved in favor of an accused, nevertheless a defendant is not entitled to benefit from an 'unreasonably restrictive interpretation of the statute.'" Holloman, 221 Va. at 198, 269 S.E.2d at 357 (quoting Ansell v. Commonwealth, 219 Va. 759, 761, 250 S.E.2d 760, 761 (1979)).

The meaning of the term firearm as used in Code § 18.2-53.1 has frequently been considered by Virginia's courts. In order to decide this case, we must review prior decisions interpreting Code § 18.2-53.1, starting with the Supreme Court of Virginia's decision in Holloman. Holloman was convicted of the use of a firearm during the commission of rape. Id. at 197, 269 S.E.2d at 357. On appeal, Holloman challenged whether his use of a spring operated BB gun met the definition of firearm under Code § 18.2-53.1. Id. In finding Holloman guilty, the Supreme Court of Virginia interpreted the General Assembly's intent in crafting the legislation to broadly define firearm beyond its traditional definition. Id. at 198-99, 269 S.E.2d at 357-58; see also Armstrong v. Commonwealth, 36 Va. App. 312, 315, 549 S.E.2d 641, 643

- 4 -

(2001) (hereinafter <u>Armstrong I</u>), <u>aff'd</u>, 263 Va. 573, 562 S.E.2d 139 (2002) (hereinafter <u>Armstrong II</u>). Specifically, the Supreme Court of Virginia held that the evidence was sufficient to convict Holloman of using a firearm in violation of Code § 18.2-53.1 upon proof that Holloman "employed an instrument that gave the appearance of having a firing capability, whether or not the object actually had the capacity to propel a bullet by the force of gunpowder." <u>Holloman</u>, 221 Va. at 199, 269 S.E.2d at 358. The Supreme Court of Virginia's rationale for broadly interpreting the term firearm was twofold. First, it reasoned that the statute "'is [not only] to deter violent criminal conduct . . . but also . . . to discourage criminal conduct that produces fear of physical harm.'" <u>Armstrong II</u>, 263 Va. at 582, 562 S.E.2d at 144 (quoting <u>Holloman</u>, 221 Va. at 198, 269 S.E.2d at 358). Therefore, a "'victim of a crime can be intimidated as much by a revolver that does not fire bullets as by one that does.'" <u>Id.</u> Second, the Supreme Court of Virginia reasoned that, as a practical matter, a crime victim "cannot be required to distinguish between a loaded pistol and a spring gun when it is brandished during commission of a felony." <u>Holloman</u>, 221 Va. at 198, 269 S.E.2d at 358.

In 1994, the Supreme Court of Virginia revisited the definition of a firearm under Code § 18.2-53.1. In <u>Yarborough v. Commonwealth</u>, 247 Va. 215, 218-19, 441 S.E.2d 342, 344 (1994), the Court reversed a conviction where the evidence raised only a suspicion that Yarborough used a firearm while perpetrating a robbery. There, Yarborough approached a woman, informed her that "this is a stickup[,]" and demanded her money. <u>Id.</u> at 216-17, 441 S.E.2d at 343. Both of Yarborough's hands were in his pockets as he approached the woman and she saw "something protruding . . . from the right hand pocket of his jacket." <u>Id.</u> at 217, 441 S.E.2d at 343. In response, the woman gave Yarborough her money. <u>Id.</u> When he was apprehended a short time later, he had no weapons in his possession – only a chilled, unopened can of beer in one of his jacket pockets. <u>Id.</u> Despite a search of the area near where the crime

occurred and where Yarborough was arrested, no weapon was found. Id. The Supreme Court of Virginia reversed his conviction because there was no evidence that Yarborough possessed anything other than an unopened can of beer and "evidence that Yarborough 'may have had' a firearm in his possession create[d] merely a suspicion of guilt." Id. at 217-19, 441 S.E.2d at 343-44.

This Court later held that a rusted, inoperable revolver was a firearm within the meaning of Code § 18.2-53.1. Miller v. Commonwealth, 23 Va. App. 208, 211-13, 475 S.E.2d 828, 829-30 (1996). There, the evidence proved that the rusted revolver could not "be fired 'because you couldn't put the ammo in it.'" Id. at 210, 475 S.E.2d at 829. The evidence further demonstrated "that a gunsmith would be able to restore the weapon, but would need to take the gun apart, then reassemble it." Id. The trial court "found that the rust on the gun did not affect its appearance" and "concluded that the weapon had not 'lost its identity as a firearm.'" Id. at 213, 475 S.E.2d at 830. Based on this rationale, this Court held that the trial court did not err and affirmed Miller's conviction for use of a firearm in the commission of a felony. Id.

In 1997, this Court revisited whether the evidence was sufficient to support a conviction for use of a firearm during the commission of a felony in a case where the evidence proved that the object used was not a traditional firearm but was shown to be a BB gun that was "the size, weight and shape of a small handgun." Thomas, 25 Va. App. at 684, 492 S.E.2d at 462. This Court interpreted Yarborough and other cases to require that the Commonwealth prove four elements to convict under Code § 18.2-53.1:

> (1) that the accused "possessed" an object; (2) that this object was a "pistol, shotgun, rifle, or other firearm"; (3) that the accused "used or attempted to use the firearm or displayed the firearm in a threatening manner"; and (4) this action involving the firearm occurred during the commission or attempt to commit one of the felonies enumerated in the statute.

- 6 -

Id. at 684-85, 492 S.E.2d at 462 (citations omitted). At the same time, this Court recognized that the Supreme Court of Virginia's interpretation of firearm under Code § 18.2-53.1 "includes some objects that are not capable of firing projectiles by an explosion of gunpowder." Id. at 685, 492 S.E.2d at 462. This Court stated that this definition would include "instruments that merely appear to have a firing capability because the General Assembly intended Code § 18.2-53.1 'to discourage criminal conduct that produces fear of physical harm' and the victim of a crime 'can be intimidated as much by a revolver that does not fire bullets as by one that does.'" Id. at 686, 492 S.E.2d at 462 (quoting Holloman, 221 Va. at 198, 269 S.E.2d at 358). In further reliance on Holloman, this Court stated that "the Supreme Court [also] reasoned that, as a practical matter, a crime victim 'cannot be required to distinguish between a loaded pistol and a spring gun when it is brandished during the commission of a felony.'" Id. at 685-86, 492 S.E.2d at 462 (quoting Holloman, 221 Va. at 198, 269 S.E.2d at 358). This Court affirmed Thomas's convictions based on the direct evidence of the BB gun's appearance, as observed by the victim during the robbery and demonstrated by examination of the item entered into evidence. Id. at 687-88, 492 S.E.2d at 463. Specifically, this Court held "[a]ppellant contends the evidence was insufficient to prove that the BB pistol he used during his robbery of the victim was a 'firearm' under Code § 18.2-53.1. Because the evidence proved that the BB pistol gave the appearance of having a firing capability, we disagree." Id. at 684, 492 S.E.2d at 462.

More recently, both this Court and the Supreme Court of Virginia have revisited the definition of firearm under Code § 18.2-53.1 in the context of an appeal for possession of a firearm by a convicted felon in violation of Code § 18.2-308.2. This Court, in a decision affirmed on appeal to the Supreme Court of Virginia, reiterated that the legislative intent behind Code § 18.2-53.1, unlike Code § 18.2-308.2, is to proscribe the use of any instrument that

reasonably produces fear of physical harm to an individual.[2]  Armstrong I, 36 Va. App. at 318

n.4, 549 S.E.2d at 643 n.4.  This Court's decision repeated the Supreme Court of Virginia's

holding in Holloman stating,

> [o]ur decisions, as well as those of the Supreme Court of Virginia,
> have read the term "firearm," as used in Code § 18.2-53.1, to
> include "anything that the victim reasonably perceives to be a
> firearm, even though it may not in actuality be a weapon capable
> of firing a projectile by any means."

Id. (quoting Holloman, 221 Va. at 199, 269 S.E.2d at 358).  In contrasting the term firearm used

in Code § 18.2-308.2 with its use in Code § 18.2-53.1, this Court stated that

> Jones [v. Commonwealth, 276 Va. 121, 661 S.E.2d 412 (2008),]
> differentiated a "firearm" in the possession of a convicted felon
> under Code § 18.2-308.2 from a "firearm" used in the commission
> of a felony under Code § 18.2-53.1.  The basis for the distinction is
> not whether a weapon "designed or intended to expel projectiles by
> the discharge or explosion of gunpowder" actually works at the
> time of a felonious act.  Rather, the distinction is that whatever
> object is used to perpetrate a felony (robbery, for instance) must
> reasonably create the perception in the victim of fear of harm.  The
> victim must perceive that toy gun as a real firearm in order for the
> would-be robber to engender the necessary threat and intimidation
> to successfully complete his task and also be guilty of violating
> Code § 18.2-53.1.

Id.

---

[2] When defining a term used in a statute but not defined by the General Assembly,

> we give that phrase "'its ordinary meaning, given the context in
> which it is used.'" Sansom v. Board of Supervisors, 257 Va. 589,
> 594-95, 514 S.E.2d 345, 349 (1999) (quoting Department of
> Taxation v. Orange-Madison Coop. Farm Serv., 220 Va. 655, 658,
> 261 S.E.2d 532, 533-34 (1980)).  "'The context may be examined
> by considering the other language used in the statute.'" Sansom,
> 257 Va. at 595, 514 S.E.2d at 349 (quoting City of Virginia Beach
> v. Board of Supervisors, 246 Va. 233, 236-37, 435 S.E.2d 382, 384
> (1993)).

Jones v. Commonwealth, 276 Va. 121, 125, 661 S.E.2d 412, 414 (2008).

The Supreme Court of Virginia affirmed this Court's decision in Armstrong I and

reiterated its holding in Holloman. Armstrong II, 263 Va. at 581-82, 562 S.E.2d at 144. In

doing so, the Supreme Court of Virginia again emphasized that in interpreting statutes, we must

give effect to the legislative intent underlying that statute. Id. at 583, 562 S.E.2d at 145.

> "Penal statutes must be 'strictly construed against the State'
> and . . . 'cannot be extended by implication or construction, or be
> made to embrace cases which are not within their letter and
> spirit.'" Commonwealth, Dep't of Motor Vehicles v. Athey, 261
> Va. 385, 388, 542 S.E.2d 764, 766 (2001) (quoting Berry v. City of
> Chesapeake, 209 Va. 525, 526, 165 S.E.2d 291, 292 (1969)).
> However, although we construe statutes strictly in criminal cases,
> we will not apply "an unreasonably restrictive interpretation of the
> statute" that would subvert the legislative intent expressed therein.
> Ansell v. Commonwealth, 219 Va. 759, 761, 250 S.E.2d 760, 761
> (1979).

Id. at 581, 562 S.E.2d at 144. The Supreme Court of Virginia reasoned that "[c]onsistent with

these principles, we have recognized that when the legislature seeks to punish the use of a

firearm as a criminal act, the term 'firearm' must not be unreasonably restricted by judicial

construction such that the legislative intent is thereby frustrated." Id. at 581, 562 S.E.2d at 144

(citations omitted).

> Similarly, when the nature of some other criminal act is defined by
> whether the defendant achieves his purpose through the use of a
> firearm, a narrow construction of the term is not warranted. See,
> e.g., Johnson v. Commonwealth, 209 Va. 291, 296, 163 S.E.2d
> 570, 574 (1968) (charge that attempted robbery involved
> "'presenting of firearms or other violence'" did not warrant jury
> instruction that the instrument displayed was an operable firearm).

Id. at 582, 562 S.E.2d at 144.

It is clear that while the General Assembly did not define the word firearm in Code

§ 18.2-53.1, both the Supreme Court of Virginia and this Court have construed the General

Assembly's intended meaning of this term and have set forth parameters of what does and does

not constitute a firearm under the statute. "[B]ecause Code § 18.2-53.1 is aimed at preventing

actual physical injury or death, the term 'firearm' includes any instrument that is capable of expelling a projectile by force or gunpowder." Thomas, 25 Va. App. at 685, 492 S.E.2d at 462 (citing Holloman, 221 Va. at 198-99, 269 S.E.2d at 357-58). As importantly, the term firearm in Code § 18.2-53.1 also includes other objects that are not capable of firing projectiles but give the appearance of being able to do so. Id.; see also Miller, 23 Va. App. at 211-13, 475 S.E.2d at 829-30 (determining that a rusted, inoperable revolver was a firearm within the meaning of Code § 18.2-53.1).

After making a detailed inquiry into the meaning of the term firearm under Code § 18.2-53.1, we find that "a mistake exists in our prior decisions." Selected Risks Ins. Co. v. Dean, 233 Va. 260, 265, 355 S.E.2d 579, 581 (1987) (citation omitted). "[W]hen a court of last resort has established a precedent, after full deliberation upon the issue by the court, the precedent will not be treated lightly or ignored, in the absence of flagrant error or mistake."[3] Id. Accordingly, in light of the twofold purpose behind Code § 18.2-53.1 to prevent actual physical

---

[3] We note that the Court has never addressed this issue en banc. Our prior decisions have all been solely the work of three-judge panels of the Court. While those decisions bind all other three-judge panels under the interpanel accord doctrine, Atkins v. Commonwealth, 54 Va. App. 340, 343 n.2, 678 S.E.2d 834, 835 n.2 (2009), they do not bind the Court sitting en banc, see Code § 17.1-402(D). In this respect, multi-panel appellate courts are structurally different from unitary appellate courts. While determinacy concerns underlying *stare decisis* still play an important role when an en banc appellate court reviews a panel decision, the doctrine cannot be of such force that it binds the en banc court or in any way undermines our duty under Code § 17.1-402(D) to provide full-court review of prior three-judge panel decisions.

> The principal utility of determinations by the courts of appeals in banc is to enable the court to maintain its integrity as an institution by making it possible for a majority of its judges always to control and thereby to secure uniformity and continuity in its decisions, while enabling the court at the same time to follow the efficient and time-saving procedure of having panels of three judges hear and decide the vast majority of cases as to which no division exists within the court.

United States v. American-Foreign S.S. Corp., 363 U.S. 685, 689-90 (1960).

injury or death and to discourage criminal conduct that produces fear of physical harm, we exercise our authority under Code § 17.1-402(D) and overrule the decision in Sprouse, 19 Va. App. at 551-52, 453 S.E.2d at 305-06, which held that an object the victim reasonably believed to be a firearm could never constitute a firearm under Code § 18.2-53.1 unless it was *in fact a firearm*. In so doing, we are mindful of the doctrine of *stare decisis* and the fact that it "is more than a mere cliche" in Virginia. Selected Risks Ins. Co., 233 Va. at 265, 355 S.E.2d at 581. "Our strong adherence to the doctrine of *stare decisis* does not, however, compel us to perpetuate what we believe to be an incorrect application of the law . . . ." Nunnally v. Artis, 254 Va. 247, 253, 492 S.E.2d 126, 129 (1997). As Sprouse directly conflicts with the harm that Code § 18.2-53.1 was enacted to prevent, we overrule that decision.[4]

In evaluating whether the evidence was sufficient to prove that the item Startin used was a firearm, we must view the evidence in the light most favorable to the Commonwealth, granting to it "all reasonable inferences fairly deducible therefrom." Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). It is undisputed that Startin possessed an item that looked like an operable firearm during the commission of a robbery. The parties stipulated that the item Startin used during the commission of the two robberies is a replica of a military firearm that was manufactured and used by all branches of military service for seventy-five

---

[4] In Wubneh v. Commonwealth, 51 Va. App. 224, 226, 656 S.E.2d 418, 419 (2008), a panel of this Court affirmed a conviction for violating Code § 18.2-53.1 where the appellant challenged the jury instruction used in his case. Specifically, the jury instruction read

> [a] firearm is a weapon designed to expel a projectile by the explosion of gunpowder, by spring mechanism, or by pneumatic pressure. It is not necessary that the object actually have the capacity of firing a projectile, provided that it retains enough of its parts that it has not lost its appearance as a firearm.

Id. at 227, 656 S.E.2d at 419. To the extent that Wubneh may be read to hold that a firearm is only a weapon if it is designed to expel a projectile and excludes any object reasonably giving the appearance of being able to do so, we overrule it. Id. at 229, 656 S.E.2d at 420.

- 11 -

years.  The record reveals that the primary difference between the Franklin Mint's John Wayne commemorative .45 caliber weapon and the actual .45 caliber weapon used by the military was the putative firearm's inability to chamber and fire ammunition by explosion because the manufacturer did not include a firing pin or other mechanical device necessary to fire a projectile.  In all other respects, however, the object appeared the same in size, weight, and shape as the original firearm.  See Holloman, 221 Va. at 198, 269 S.E.2d at 358.  Startin's replica of a firearm was certainly capable of evoking fear of physical harm.  Therefore, we conclude that the trial court did not err in finding that the item Startin used was a firearm for the purposes of Code § 18.2-53.1.

### III.  CONCLUSION

For the foregoing reasons, we overrule Sprouse and affirm Startin's convictions for use of a firearm during the commission of a felony.

Affirmed.

Elder, J., dissenting.

The majority holds that the replica of a firearm Startin used during the commission of two robberies is a firearm within the meaning of Code § 18.2-53.1. In so holding, it overturns this Court's decision in Sprouse v. Commonwealth, 19 Va. App. 548, 453 S.E.2d 303 (1995), which required the Commonwealth to "prove that the accused *actually* had a firearm in his possession." Id. at 551, 453 S.E.2d at 305 (emphasis added). For the reasons stated in the panel dissent, Startin v. Commonwealth, 54 Va. App. 778, 792-95, 682 S.E.2d 115, 122-24 (2009) (Elder, J., dissenting), I believe Sprouse was correctly decided. Thus, I would decline to overrule Sprouse, and I respectfully dissent.

I take no issue with the majority's careful and thorough analysis of the evolution of the term firearm as contemplated under Code § 18.2-53.1. And, as the majority correctly notes, the doctrine of *stare decisis* "'plays a significant role in the orderly administration of justice by assuring consistent, predictable, and balanced application of legal principles.'" Castle v. Lester, 272 Va. 591, 601, 636 S.E.2d 342, 347 (2006) (quoting Pulliam v. Coastal Emergency Servs., Inc., 257 Va. 1, 10, 509 S.E.2d 307, 312 (1999)). Unlike the majority, however, I do not view our decision in Sprouse as "such a flagrant error or mistake" as to amount to "'an incorrect application of the law.'" Harmon v. Sadjadi, 273 Va. 184, 197, 639 S.E.2d 294, 302 (2007) (quoting Nunnally v. Artis, 254 Va. 247, 253, 492 S.E.2d 126, 129 (1997)).

I would not be so quick to overturn Sprouse, a decision that has remained valid law for over a decade. We have consistently relied upon Sprouse during this period of time and have either distinguished or harmonized its principles in accordance with the mandates of Code § 18.2-53.1. See, e.g., Wubneh v. Commonwealth, 51 Va. App. 224, 230 n.5, 656 S.E.2d 418, 421 n.5 (2008) (noting that the jury instruction was "consistent with Sprouse in requiring that the subject instrument be 'designed' as a 'weapon' to 'expel a projectile' (even if it does not have

the 'actual[] . . . capability of firing a projectile, provided . . . it has not lost its appearance as a firearm') (quoting Virginia Model Jury Instructions, Criminal, No. 18.702)); Thomas v. Commonwealth, 25 Va. App. 681, 687, 492 S.E.2d 460, 463 (1996) (affirming the defendant's conviction based on "[b]oth the victim's observations of the pistol during the robbery and an examination of the pistol itself," which demonstrated the BB gun had firing capability and "gave the appearance of having a firing capability"); Miller v. Commonwealth, 23 Va. App. 208, 213, 475 S.E.2d 828, 830 (1996) (noting "rust on the gun did not affect its appearance" and "that the weapon had not 'lost its identity as a firearm'"); Elmore v. Commonwealth, 22 Va. App. 424, 428-30, 470 S.E.2d 588, 589-90 (1996) (distinguishing Sprouse on the ground that the gun was not recovered and thus could not contradict the circumstantial evidence that "the defendant gave [the victim] a note stating that he had a 'gun,' pointed to his pocket and said that he did not want to hurt anyone"). Moreover, we have declined to reevaluate Sprouse *en banc* since it was decided. See Code § 17.1-402(D) (authorizing this Court to "overrule *any* decision by any panel or of the full court" either "upon its own motion at any time" or "when any judge of any panel . . . certif[ies] that . . . a decision of such panel is in conflict with a prior decision" (emphasis added)). Having properly accommodated Sprouse at the panel stage and declined to address it previously *en banc* when granted the opportunity to do so, we should be wary of reversing those principles now.

I believe Sprouse should remain valid precedent in interpreting Code § 18.2-53.1. I further believe the principles enunciated in that decision mandate the reversal of Startin's convictions for use of a firearm during the commission of a felony. Thus, I respectfully dissent from the majority's affirmance of Startin's convictions.

# *VIRGINIA:*

*In the Court of Appeals of Virginia on*   **Tuesday**   *the*  **20th**  *day of*  **October, 2009**.

Duane Elmer Startin, Jr.,                                                                          Appellant,

 against                      Record No. 2837-08-4
                             Circuit Court Nos. FE-2005-1033 through FE-2005-1035

Commonwealth of Virginia,                                                                   Appellee.

Upon a Petition for Rehearing En Banc

Before Chief Judge Felton, Judges Elder, Frank, Humphreys, Kelsey, McClanahan, Haley, Petty, Beales, Powell and Alston

On September 22, 2009 came the appellant, by court-appointed counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on September 8, 2009, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof, the petition for rehearing *en banc* is granted with regard to the issue(s) raised therein, the mandate entered herein on September 8, 2009 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

Notwithstanding the provisions of Rule 5A:35, the following briefing schedule hereby is established:  Appellant shall file an opening brief upon rehearing *en banc* within 21 days of the date of entry of this order; appellee shall file an appellee's brief upon rehearing *en banc* within 14 days of the date on which the opening brief is filed; and appellant may file a reply brief upon rehearing *en banc* within 14 days of the date on which the appellee's brief is filed.  The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter.  It is further ordered that the appellant shall file twelve additional copies of the appendix previously filed in this case.  In addition, any party represented by counsel shall file twelve electronic copies of their brief (and the appendix, if the party filing the appendix is represented by

counsel) with the clerk of this Court. The electronic copies must be filed on twelve separate CDs or

DVDs and must be filed in Adobe Acrobat Portable Document Format (PDF).[1]

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By: *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

---

[1] The guidelines for the creation and submission of a digital brief package can be found at www.courts.state.va.us, in the Court of Appeals section under "Resources and Reference Materials."

COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Beales and Powell
Argued at Alexandria, Virginia


DUANE ELMER STARTIN, JR.

                                                          OPINION BY
v.        Record No. 2837-08-4                   JUDGE CLEO E. POWELL
                                                       SEPTEMBER 8, 2009

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David T. Stitt, Judge

Mark Wise, Assistant Public Defender (Office of the Public
Defender, on briefs), for appellant.

Craig W. Stallard, Assistant Attorney General (William C. Mims,
Attorney General, on brief), for appellee.


Duane Elmer Startin, Jr., appellant, appeals two convictions for use of a firearm during

the commission of a felony, in violation of Code § 18.2-53.1.  Appellant contends that the trial

court erred in finding that the evidence was sufficient to prove that (1) the item appellant used

during the commission of two robberies was a "firearm," and (2) appellant used or attempted to

use a firearm or displayed a firearm in a threatening manner.  Finding no error, we affirm the trial

court's judgments and affirm appellant's convictions.

## I.  BACKGROUND

On January 12, 2005, appellant entered a CVS Pharmacy, approached the pharmacy

counter, and stated that he needed a bottle of Oxycontin.  When the pharmacist asked appellant

for his prescription, appellant lifted his shirt to reveal what looked like a black handgun tucked

into the front of his pants.  The clerk saw the gun but hesitated before appellant demanded that

she "hurry up." The pharmacist gave appellant a bottle of generic Oxycodone ER. Appellant left the store with the bottle.

Nine days later, appellant entered a different CVS Pharmacy and asked the pharmacist whether they stocked Oxycontin. When appellant learned that the pharmacy had Oxycontin, he grabbed an object that appeared to be a black handgun from his waistband and pointed it at the clerk. The clerk described the gun as an older model handgun but was unsure whether it was a pistol or revolver. When appellant ordered the pharmacist to give him the drugs, the pharmacist gave appellant one bottle containing one hundred pills.

After appellant was arrested, police recovered a "John Wayne Replica" .45 caliber handgun made by the Franklin Mint. This commemorative replica appears the same in size, weight, and shape as the original firearm. This replica, however, does not include a firing pin or other mechanical device necessary to fire a projectile. Appellant told police that this was the object he used during the robberies.

Appellant pled guilty to three counts of robbery but pled not guilty to two counts of use of a firearm in the commission of a felony, in violation of Code § 18.2-53.1. During his bench trial, appellant challenged whether the item he possessed met the definition of a firearm to support two convictions under Code § 18.2-53.1. As evidence against appellant in his trial for two counts of use of a firearm, the court admitted a document titled "Official Version of Offense" prepared by the Commonwealth for the Probation and Parole office and a diagram of the item possessed provided by the appellant. The "Official Version of Offense" stipulated that

> [t]his weapon is a commemorative replica. In its outward appearance, including size, weight, and shape, it appears to be an operational firearm designed to expel .45 caliber ammunition by explosion. However, because the weapon was a replica, the manufacturer did not include a firing pin or other mechanical device necessary to fire a projectile by explosion.

The "Care and Handling Instructions" accompanying the diagram stated

You now own a non-firing replica of the Model M-1911 A1 U.S. Government Automatic Pistol John Wayne carried in most of his military films.

Used in all services from World War I to Viet Nam, this legendary "hand howitizer" was so effective, it was not retired until 1986 – after 75 years of continuous service.

Although your re-creation will not permit chambering or firing of ammunition, proper handling is still important.

Here's how to operate it:

To release the 7-round magazine, press the *magazine catch* (17 in the diagram) and allow it to free fall. To replace, re-insert it into the receiver in front of the *lanyard ring* (15), then slam it shut with the heal of your hand.

Three different safety devices are provided: A *safety lock* (10) on the frame. A trigger disconnector, inside the *receiver* (20). And a *grip safety* (12) on the backstrap, which allows firing only if actually compressed while the trigger is being squeezed.

To operate, your non-firing re-creation, grip it as if to fire, but with your index finger *at the side of the receiver*, rather than on the trigger.

Next, use the thumb and forefinger of your non-shooting hand to grasp the *slide* (3) and pull it *backward* until it stops. Then let go and allow the recoil spring to carry it forward automatically. Do *not* ease the slide forward yourself.

To release the slide, push down the knurled area at the rear of the slide stop (6).

To help your replica retain its beauty and keep functioning properly, dust regularly and use a soft cloth to rub a good, three-in-one oil into its surface periodically. (*Never* remove the diamond grips (13) on either side of the receiver).

For safety's sake, always keep your free hand away from moving parts.

And finally, *never point a weapon at a living person*.

Upon a proffer of the evidence, the trial court convicted appellant of two counts of use of a firearm during the commission of a felony. This appeal follows.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE TO PROVE THAT THE ITEM APPELLANT USED IN THE COMMISSION OF THE ROBBERY WAS A FIREARM

Appellant relies on Sprouse v. Commonwealth, 19 Va. App. 548, 551-52, 453 S.E.2d 303, 305-06 (1995), to argue that a conviction under Code § 18.2-53.1 requires that the object displayed actually be a firearm and because the item he possessed was an inoperable, commemorative replica of a firearm, he cannot be properly convicted of using a firearm during the commission of a felony. The Commonwealth responds that Code § 18.2-53.1 "not only is aimed at preventing actual physical injury or death but also is designed to discourage criminal conduct that produces fear of physical harm." Holloman v. Commonwealth, 221 Va. 196, 198, 269 S.E.2d 356, 358 (1980). Because the trial court found that appellant's commemorative replica firearm "appear[ed] to be an operational firearm designed to expel forty-five caliber ammunition," the Commonwealth contends that the replica firearm was indeed a firearm for the purpose of Code § 18.2-53.1.

To support a conviction under Code § 18.2-53.1, the Commonwealth must prove

> (1) that the accused "possessed" an object; (2) that this object was a "pistol, shotgun, rifle, or other firearm"; (3) that the accused "used or attempted to use the firearm or displayed the firearm in a threatening manner"; and (4) this action involving the firearm occurred during the commission or attempt to commit one of the felonies enumerated in the statute.

Thomas v. Commonwealth, 25 Va. App. 681, 684-85, 492 S.E.2d 460, 462 (1997) (citing Yarborough v. Commonwealth, 247 Va. 215, 218, 441 S.E.2d 342, 344 (1994); Sprouse, 19 Va. App. at 551-52, 453 S.E.2d at 306). Code § 18.2-53.1 does not define "firearm" nor does it refer to any other statute that defines the term. "Even though any ambiguity or reasonable doubt

- 4 -

as to the meaning of a penal statute must be resolved in favor of an accused, nevertheless a defendant is not entitled to benefit from an 'unreasonably restrictive interpretation of the statute.'" Holloman, 221 Va. at 198, 269 S.E.2d at 357 (quoting Ansell v. Commonwealth, 219 Va. 759, 761, 250 S.E.2d 760, 761 (1979)).

On a number of occasions, Virginia appellate courts have considered whether a given item fell within the statutory definition of a "firearm" as used in Code § 18.2-53.1, the statute proscribing the use of a firearm during the commission of a felony. The Supreme Court of Virginia in 1980 held that the "evidence was sufficient to convict defendant of using a firearm in violation of Code § 18.2-53.1 upon proof that defendant employed an instrument which gave the appearance of having a firing capacity, whether or not the object actually had the capacity to propel a bullet by force of gunpowder." Id. at 199, 269 S.E.2d at 358; see also Cox v. Commonwealth, 218 Va. 689, 690-91, 240 S.E.2d 524, 525 (1968) (holding that a pistol loaded with wooden bullets and, therefore, incapable of firing was a firearm under Code § 18.2-53.1). There, the item Holloman used in the commission of a rape was an object that "appears in size, weight and shape to be a .45 caliber automatic pistol. Testimony showed it fires BBs by force of a spring, not by gunpowder. Markings on the black weapon indicate it is a .177 caliber 'Marksman Repeater' manufactured in 'Los Angeles 25, Calif.'" Holloman, 221 Va. at 197, 269 S.E.2d at 357.

In 1994, the Supreme Court revisited the definition of a firearm under Code § 18.2-53.1. In Yarborough, 247 Va. at 218-19, 441 S.E.2d at 344, our Supreme Court reversed a conviction where the evidence raised only a suspicion that Yarborough used a firearm while perpetrating a robbery. There, Yarborough approached a woman, informed her that "this is a stickup[,]" and demanded her money. Id. at 216-17, 441 S.E.2d at 343. Both of Yarborough's hands were in his pockets as he approached the woman and she saw "something protruding . . . from the right hand

pocket of his jacket." Id. at 217, 441 S.E.2d at 343. In response, the woman gave Yarborough her money. Id. When he was apprehended a short time later, he had no weapons in his possession – only a chilled, unopened can of beer in one of his jacket pockets. Id. Despite searching the area near where the crime occurred and where Yarborough was arrested, no weapon was found. Id.

A year later, this Court considered whether a toy pistol was sufficient under Code § 18.2-53.1 to support a conviction. Sprouse, 19 Va. App. at 549, 453 S.E.2d at 304. In that case, the Commonwealth conceded at trial and on appeal that the item Sprouse displayed during the robbery was a toy gun. Id. at 549 n.1, 453 S.E.2d at 304 n.1. During the robbery, Sprouse approached a store clerk and purchased a soda. Id. at 549, 453 S.E.2d at 304. Sprouse, who was only two to three feet away from the clerk, pulled out an object that appeared to be a real handgun and said, "This is a robbery." Id. The clerk believed the gun was real and was terrified that Sprouse would shoot and kill her if she did not comply with his demands. Id. A few days later, police found a black and silver toy pistol inside Sprouse's car. Id. at 550, 453 S.E.2d at 305. The officer who found the gun did not immediately recognize it to be a toy. Id. In Sprouse, this Court interpreted Yarborough to mean that

> if an object is used to inflict fear or intimidation to accomplish its purpose of rape or robbery, the fear or intimidation may be proved by showing that the victim had reason to believe the object was a firearm although, in fact, it was not a firearm. However, that defendant may not be convicted for the use of a firearm under Code § 18.2-53.1 unless the evidence discloses beyond a reasonable doubt that the object used to cause the victim to reasonably believe it was a firearm was, in fact, a firearm.

Sprouse, 19 Va. App. at 551-52, 453 S.E.2d at 305-06. This Court concluded that because the evidence failed to prove beyond a reasonable doubt that the item Sprouse used to "cause the victim to reasonably believe it was a firearm was, in fact, a firearm," he could not be properly convicted under Code § 18.2-53.1. Id. at 552, 453 S.E.2d at 306.

The next year, this Court held that a rusted, inoperable revolver was a firearm within the meaning of Code § 18.2-53.1. Miller v. Commonwealth, 23 Va. App. 208, 211-13, 475 S.E.2d 828, 829-30 (1996). There, the evidence proved that the rusted revolver could not "be fired 'because you couldn't put the ammo in it." Id. at 210, 475 S.E.2d at 829. The evidence further demonstrated "that a gunsmith would be able to restore the weapon, but would need to take the gun apart, then reassemble it." Id. The trial court "found that the rust on the gun did not affect its appearance" and "concluded that the weapon had not 'lost its identity as a firearm.'" Id. at 213, 475 S.E.2d at 830. Based on this, we held that the trial court did not err and affirmed Miller's conviction for use of a firearm in the commission of a felony. Id.

This Court revisited whether the evidence was sufficient to support a conviction for use of a firearm during the commission of a felony in a case where the evidence proved that the appellant used a BB gun that was "the size, weight and shape of a small handgun." Thomas, 25 Va. App. at 684, 492 S.E.2d at 462. This Court interpreted Yarborough and other cases to require that the Commonwealth prove four elements for a successful prosecution under Code § 18.2-53.1:

> (1) that the accused "possessed" an object; (2) that this object was a "pistol, shotgun, rifle, or other firearm"; (3) that the accused "used or attempted to use the firearm or displayed the firearm in a threatening manner"; and (4) this action involving the firearm occurred during the commission or attempt to commit one of the felonies enumerated in the statute.

Thomas, 25 Va. App. at 684-85, 492 S.E.2d at 462 (citing Yarborough, 247 Va. at 218, 441 S.E.2d at 344; Sprouse, 19 Va. App. at 551-52, 453 S.E.2d at 306). This Court recognized that the Supreme Court's interpretation of "firearm" under Code § 18.2-53.1 "includes some objects that are not capable of firing projectiles by an explosion of gunpowder." Id. at 685, 492 S.E.2d at 462. This definition would include "instruments that merely appear to have a firing capability because the General Assembly intended Code § 18.2-53.1 'to discourage criminal conduct that

produces fear of physical harm' and the victim of a crime 'can be intimidated as much by a revolver that does not fire bullets as by one that does.'" Id. at 685-86, 492 S.E.2d at 462 (quoting Holloman, 221 Va. at 198, 269 S.E.2d at 358); see also Armstrong v. Commonwealth, 263 Va. 573, 582-83, 562 S.E.2d 139, 144 (2002) (discussing how the definition of "firearm" is more narrow or more broad depending on the purpose of the statute in which it is used). "[T]he Supreme Court [also] reasoned that, as a practical matter, a crime victim 'cannot be required to distinguish between a loaded pistol and a spring gun when it is brandished during the commission of a felony.'" Thomas, 25 Va. App. at 685-86, 492 S.E.2d at 462 (quoting Holloman, 221 Va. at 198, 269 S.E.2d at 358). In Thomas, this Court ultimately concluded that the direct evidence of the BB gun's appearance, as observed by the victim during the robbery and demonstrated by examination of the item entered into evidence, excluded the possibility that the BB gun was a "toy pistol" and affirmed Thomas's conviction. Id. at 687-88, 492 S.E.2d at 463.

The Supreme Court of Virginia again addressed the issue of whether the evidence was sufficient to support a conviction for use of a firearm during the commission of a felony in Powell v. Commonwealth, 268 Va. 233, 602 S.E.2d 119 (2004). In Powell, the robber informed the victims that he had a gun. Id. at 235, 602 S.E.2d at 120. He had his hand in his pocket throughout the robbery and he behaved "in a nervous, fidgety manner[.]" Id. Despite that no gun was found when Powell was arrested a short time later, the Supreme Court affirmed his conviction. Id. at 235, 237, 602 S.E.2d at 120, 121. The Court reasoned that

> [i]t was within the province of the trier of fact to consider all the evidence and resolve any conflicts. In this case, evidence that no gun was found conflicts with Powell's statements and actions during the commission of the offenses. The trier of fact resolved this conflict against Powell, and in doing so, necessarily concluded that Powell had a gun. In other words, the resolution of the factual conflict in this manner established beyond a reasonable doubt that Powell had a gun. Based on this record we cannot say

that the judgment of the trial court was plainly wrong or without evidence to support it.

Id. at 237, 602 S.E.2d at 121.

Last year, this Court again considered the definition of "firearm" to support a conviction for use of a firearm during the commission of a felony where the evidence proved that the gun was a CO2 operated, BB gun "expelling a projectile by pneumatic pressure." Wubneh v. Commonwealth, 51 Va. App. 224, 226, 656 S.E.2d 418, 419 (2008). There, the jury was instructed, without objection from Wubneh, that

> A firearm is a weapon designed to expel a projectile by the explosion of gunpowder, by spring mechanism, or by pneumatic pressure. It is not necessary that the object actually have the capacity of firing a projectile, provided that it retains enough of its parts that it has not lost its appearance as a firearm.

Id. at 227, 656 S.E.2d at 419. This instruction was taken from the Virginia Model Jury Instructions.[1] Id. In Wubneh, this Court reiterated the principles behind Code § 18.2-53.1 and the cases interpreting it, discussed above. In a footnote, this Court stated that the instruction given in Wubneh is consistent with this Court's holding in Sprouse, 19 Va. App. at 551-52, 453 S.E.2d at 305-06. Wubneh, 51 Va. App. at 230 n.5, 656 S.E.2d at 421 n.5 (stating "[i]n this regard, we note that the firearm instruction at issue here is consistent with Sprouse in requiring that the subject instrument be 'designed' as a 'weapon' to 'expel a projectile' (even if it does not have the 'actual[] . . . capability of firing a projectile, provided . . . it has not lost its appearance as a firearm'). Virginia Model Jury Instructions, Criminal, No. 18.702").

---

[1] Because Wubneh did not object to this instruction when proffered by the Commonwealth, one of the issues before this Court on appeal was whether Wubneh was entitled to the ends of justice exception to Rule 5A:18. Wubneh, 51 Va. App. at 227-28, 656 S.E.2d at 419-20. This Court ultimately held that there was "no miscarriage of justice warranting application of the ends of justice exception to Rule 5A:18 and the issue on appeal [was] procedurally defaulted." Id. at 232, 656 S.E.2d at 422. This Court, in reaching this determination, analyzed the issue on its merits and that analysis is discussed in this case.

It is undisputed that appellant possessed an object that he displayed during the commission of a robbery.[2] The parties stipulated that the item appellant used during the commission of two robberies is a replica of a military firearm that was manufactured and used by all branches of military service for seventy-five years. The record reveals that the primary difference between the Franklin Mint's John Wayne commemorative .45 caliber weapon and the actual .45 caliber weapon used by the military was the putative firearm's inability to chamber and fire ammunition by explosion because the manufacturer did not include a firing pin or other mechanical device necessary to fire a projectile.

Thus, the issue in this case presents one of first impression to our Court: whether a replica firearm that is visually indistinguishable from a real firearm but incapable of expelling a projectile is a "firearm" for the purposes of Code § 18.2-53.1. As a starting point, it is important to note that a replica is "an exact copy . . . executed by the original artist; a copy exact in all details." Merriam-Webster's Collegiate Dictionary 1056 (11th ed. 2004). Although Sprouse provides us with scant details about the object used, we know that it was a *toy* that appeared to be a weapon. Sprouse, 19 Va. App. at 549-50, 453 S.E.2d at 304-05. A toy is "something for a child to play with." Merriam-Webster's Collegiate Dictionary, supra, at 1323.

A replica is not *per se* a toy.[3] In evaluating whether the evidence was sufficient to prove that the item appellant used was a firearm, we must view the evidence in the light most favorable to the Commonwealth, granting to it "all reasonable inferences fairly deducible therefrom."

---

[2] Though appellant does not argue that he did not display an object, he does contend that he did not do so in a threatening manner. See infra § B.

[3] Contrary to the dissent's suggestion, the record is silent as to whether the item was originally designed to be a firearm. Indeed, by the very fact that it is a replica of a weapon used by the military, one could infer that it was designed to be a firearm, exactly like the original firearm's purpose, but was rendered unable to chamber and fire ammunition by the omission of a firing pin.

Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  Like the firearm in Miller, the firearm appellant used is incapable of chambering and firing ammunition, yet that does not mean that it has "'lost its identity as a firearm.'"  23 Va. App. at 213, 475 S.E.2d at 830.  Indeed, the description of the replica entered into evidence reveals that it has retained enough of its original parts that it has "'not lost its identity as a firearm.'"  Id. Specifically, the "John Wayne replica" contained a seven-round magazine, safety devices, trigger disconnector, and movable slide.  Although the replica could not chamber a round, it had the capacity to be "operate[d] . . . as if to fire," if the grip safety was compressed while the trigger is being squeezed.  Therefore, like the firearm in Miller, it was still a firearm.

> The purpose of Code § 18.2-53.1, keyed to serious crimes and prescribing inflexible penalties, is to deter violent criminal conduct.  The statute not only is aimed at preventing actual physical injury or death but also is designed to discourage criminal conduct that produces fear of physical harm.  Such fear of harm results just as readily from employment of an instrument that gives the appearance of having a firing capability as from use of a weapon that actually has the capacity to shoot a projectile.  The victim of a crime can be intimidated as much by a revolver that does not fire bullets as by one that does . . . .

Holloman, 221 Va. at 198, 269 S.E.2d at 358 (citing Ansell, 219 Va. at 763, 250 S.E.2d at 762). Therefore, we conclude that the trial court did not err in finding that the item appellant used was a firearm for the purposes of Code § 18.2-53.1.

## B.  SUFFICIENCY OF THE EVIDENCE TO PROVE THAT APPELLANT USED THE ITEM HE POSSESSED IN A "THREATENING MANNER"

Appellant next contends that the evidence is insufficient to prove that he used or attempted to use a firearm or displayed a firearm in a threatening manner.  "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."  Rule 5A:18.  We have repeatedly stated that the

purpose of "'Rule 5A:18 is to alert the trial judge to possible error so that the judge may consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials.'" Neal v. Commonwealth, 15 Va. App. 416, 422, 425 S.E.2d 521, 524 (1992) (quoting Martin v. Commonwealth, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992)).

> "The ends of justice exception is narrow and is to be used sparingly," and only when a trial court error is "clear, substantial and material." Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989). "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." Id. (citing Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987)). "In examining a case for miscarriage of justice, we do not simply review the sufficiency of the evidence under the usual standard, but instead determine whether the record contains affirmative evidence of innocence or lack of a criminal offense." Lewis v. Commonwealth, 43 Va. App. 126, 134, 596 S.E.2d 542, 546 (2004), rev'd on other grounds, 269 Va. 209, 608 S.E.2d 907 (2005). See also Michaels v. Commonwealth, 32 Va. App. 601, 529 S.E.2d 822 (2000); Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997).

Tooke v. Commonwealth, 47 Va. App. 759, 764-65, 627 S.E.2d 533, 536 (2006). Appellant's argument, that he did not display a firearm in a threatening manner, is procedurally defaulted because it was not raised in the trial court. Though appellant asks this Court in his reply brief to invoke the ends of justice exception and consider the merits of this argument, such invocation is unwarranted as the record here does not provide us with "affirmative evidence of innocence or lack of a criminal offense." Lewis, 43 Va. App. at 134, 596 S.E.2d at 546.

### III. CONCLUSION

For the foregoing reasons, we affirm appellant's convictions for use of a firearm during the commission of a felony. We further find that appellant failed to preserve his argument that he did not use or attempt to use a firearm or display a firearm in a threatening manner, and we

decline to invoke the ends of justice exception to Rule 5A:18 because the record is devoid of "affirmative evidence of innocence or lack of a criminal offense."

Affirmed.

Elder, J., dissenting.

The Commonwealth stipulated that the replica used by appellant in the commission of the robberies was not designed to be an operable firearm capable of firing a projectile by any means. Therefore, I believe this Court's decision in Sprouse v. Commonwealth, 19 Va. App. 548, 453 S.E.2d 303 (1995), compels the conclusion that the replica was not a "firearm" under Code § 18.2-53.1, and I respectfully dissent. Because I would reverse the conviction on these grounds, I would not reach the issue of whether appellant displayed the item in a threatening manner.

The evolution of the term "firearm" as used in Code § 18.2-53.1 has taken a peculiar course, as the Supreme Court has relaxed the quantum of proof needed to sustain a conviction. The Court shifted the focus away from the actual firing capability of the object to the "deter[rence] of criminal conduct." Holloman v. Commonwealth, 221 Va. 196, 198, 269 S.E.2d 356, 358 (1980). However, the Court has limited this principle by requiring proof "that the accused actually had a firearm in his possession . . . ." Yarborough v. Commonwealth, 247 Va. 215, 218, 441 S.E.2d 342, 344 (1994). Subsequent decisions have sustained convictions based solely on circumstantial evidence.[4]

In Sprouse, this Court acknowledged that the focus of "'preventing actual physical injury or death" and "discourag[ing] criminal conduct that produces fear of physical harm'" must give way where the evidence affirmatively proves that the instrument used during the commission of

_____

[4] Although the Court initially forbade conviction based solely on a victim's perception that the perpetrator possessed a firearm, see Yarborough, 247 Va. at 219-20, 441 S.E.2d at 344, it has subsequently held a conviction may be based upon circumstantial evidence that the perpetrator possessed a firearm, including evidence of the victim's belief or perception that the accused had a firearm, Powell v. Commonwealth, 268 Va. 233, 237, 602 S.E.2d 119, 121 (2004); McBride v. Commonwealth, 24 Va. App. 603, 605, 484 S.E.2d 165, 166 (1997), the accused's representations, Elmore v. Commonwealth, 22 Va. App. 424, 430, 470 S.E.2d 588, 590 (1996), and the instrument's physical appearance, Thomas v. Commonwealth, 25 Va. App. 681, 687, 492 S.E.2d 460, 463 (1997).

- 14 -

a felony was not a firearm. Sprouse, 19 Va. App. at 550, 453 S.E.2d at 305 (quoting Holloman, 221 Va. at 198, 269 S.E.2d at 358). The object admitted into evidence provided such affirmative proof because "the Commonwealth conceded that it was a toy pistol." Id. While convincing in appearance, the toy could not "expel a projectile by force of gunpowder" and thus could not be a firearm.[5] Id.

Relying on Wubneh v. Commonwealth, 51 Va. App. 224, 656 S.E.2d 418 (2008), the majority attempts to distinguish the present case from Sprouse by stating that the replica "retains enough of its original parts that it has not lost its appearance as a firearm." I disagree with this reasoning in several respects. First and foremost, the language the majority cites from Wubneh comes not from a principle of law grounded in existing precedent, but from a jury instruction given without objection that was determined to be the law of the case. While this Court analyzed the portion of the instruction relating to whether an instrument firing a projectile by spring mechanism or pneumatic pressure could be a firearm, it did not hold that appearance could overcome a lack of firing capability. See Wubneh, 51 Va. App. at 228, 656 S.E.2d at 420. Quite the opposite, it acknowledged that Sprouse provided a caveat to the physical appearance rule and held that the BB gun was "'designed' as a 'weapon' to 'expel a projectile.'" Id. at 230 n.5, 656 S.E.2d at 421 n.5 (quoting Virginia Model Jury Instructions, Criminal No. 18.702). Thus, Wubneh did not hold that an object fell within the definition of "firearm" if it contained a certain quantity of original parts. The only pertinent analysis is whether the instrument had the capacity to fire a projectile.

---

[5] Of course, an instrument capable of firing a projectile by a method other than explosion of gunpowder is also a firearm. See, e.g., Holloman, 221 Va. at 197, 269 S.E.2d at 357 (spring-loaded BB gun); Wubneh v. Commonwealth, 51 Va. App. 224, 226, 656 S.E.2d 418, 419 (2008) (gas-propelled BB gun).

Second, the majority's factual characterization that the replica has firing capability contradicts the stipulated facts in the record. While an instrument that originally had the capability to fire a projectile does not later "los[e] its identity as a firearm," Miller v. Commonwealth, 23 Va. App. 208, 213, 475 S.E.2d 828, 830 (1996), the replica used by appellant never had an identity as a firearm in the first place. The majority places too much weight on the description of the grip safety in the "Care and Handling Instructions" to infer that the replica had "firing capacity if the grip safety was compressed while the trigger is being squeezed." This is merely a description of one feature of the replica that does not reconcile with the rest of the record. For example, the "Official Version of the Offense" states "because the weapon was a replica, the *manufacturer* did not *include* a firing pin or other mechanical device necessary to fire a projectile by explosion." (Emphasis added). Moreover, the Care and Handling Instructions, while referring to the grip safety, clearly indicate that the "re-creation *will not permit* chambering or firing of ammunition." When viewed as a whole, the record does not suggest that the manufacturer altered an existing weapon capable of firing a projectile.[6] Rather, this language indicates that the replica was designed from its inception to lack a firing pin, and thus never capable of firing a projectile, whether by explosion of gunpowder, spring mechanism, or pneumatic pressure.

Finally, the majority seems to suggest that the replica's appearance is more important than its actual firing capability or lack thereof. This is plainly contrary to the holding in Sprouse. While victim perception and physical appearance can provide compelling circumstantial

---

[6] The Official Version of the Offense and the Care and Handling Instructions are silent as to whether the replica was modified from an operational firearm or merely a non-operational facsimile. The parties chose not to introduce expert opinion testimony regarding the replica or even the replica itself to clarify the evidence. We must therefore base our analysis on the descriptions provided, keeping in mind that "ambiguity or reasonable doubt as to the meaning of a penal statute must be resolved in favor of an accused[.]" Holloman, 221 Va. at 198, 269 S.E.2d at 357.

evidence that the defendant used a firearm, <u>Sprouse</u>'s holding is limited to situations where the alleged instrument is not introduced into evidence. Where the instrument is provided to the fact finder, or the parties stipulate to its description, circumstantial evidence cannot overcome direct proof that the instrument is not, or never was, capable of firing a projectile. <u>See</u> <u>Thomas v. Commonwealth</u>, 25 Va. App. 681, 686-87, 492 S.E.2d 460, 463 (1997) (holding that an item's visual appearance can be evidence it is a firearm where the instrument in question actually has the ability to fire projectiles).

For these reasons, I would hold that the evidence is insufficient to prove that the replica used by appellant in the commission of the robberies was a firearm under Code § 18.2-53.1. Thus, I respectfully dissent from the majority's affirmance of appellant's convictions.